**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| J-M MANUFACTURING COMPANY, INC., | |
| Plaintiff, | |
| v. | Case No. 3:26-cv-00094-SPM |
| THE GORI LAW FIRM, BETH GORI-GREGORY, SARA SALGER, ERIN BEAVERS, JASON STEINMEYER, CHRISTOPHER LAYLOFF, AND JOHN AND JANE DOES 1-25. | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................................1

SUMMARY OF ALLEGATIONS .................................................................................................4

    A.    J-M Fails to Connect Any Settled Cases to the Purported Fraudulent Scheme.......5

    B.    The Complaint's RICO Enterprise Allegations Are Deficient ................................6

    C.    The Defendant-Specific Allegations Are Sparse and Conclusory ..........................7

LEGAL STANDARD.....................................................................................................................9

ARGUMENT ...............................................................................................................................10

I.    *NOERR-PENNINGTON* BARS J-M'S RICO COMPLAINT BECAUSE IT IS PREDICATED ON UNDERLYING LITIGATION ACTIVITY ......................................10

    A.    The *Noerr-Pennington* Doctrine Applies to the Conduct Alleged in the Complaint...............................................................................................................11

    B.    J-M Does Not, and Cannot, Plausibly Allege That the Narrow "Sham" Litigation Exception Applies to the Underlying Litigation ..................................13

II.    J-M FAILS TO STATE A RICO VIOLATION (COUNTS I AND II) ............................17

    A.    J-M Fails to Adequately Allege a RICO Enterprise ............................................17

        1.    J-M's Enterprise Allegations Fail for Lack of Distinctiveness........................18

        2.    J-M Has Not Plausibly Alleged an Enterprise with a Common Purpose or Organizational Structure ...............................................................................20

    B.    J-M Has Not Plausibly Alleged a Pattern of Racketeering Activity.....................26

        1.    Allegations Concerning the Purported Bounty System, Fraud Playbook, and Batch Settlements Fail Rule 9(b) ............................................................27

        2.    Allegations Concerning the Sample Cases Fail Rule 9(b)..............................29

        3.    J-M Cannot Premise Racketeering Activity on Use of the Mail and Wires in Connection with Litigation .......................................................................33

    C.    J-M Fails to Plausibly Allege RICO Conduct or a Pattern of Racketeering Activity as to Each Individual Defendant............................................................35

        1.    Ms. Gori-Gregory .......................................................................................37

2. Ms. Salger ...................................................................................................39

3. Ms. Beavers..................................................................................................41

4. Mr. Steinmeyer ...........................................................................................43

5. Mr. Layloff...................................................................................................44

D. J-M Fails to Plead a Conspiracy to Violate 18 U.S.C. § 1962(c) (Count V).........46

III. J-M FAILS TO STATE RICO CLAIMS BASED ON THE PURPORTED INVESTMENT OF RACKETEERING PROCEEDS UNDER 18 U.S.C. § 1962(a).......47

A. J-M's Claim for the Investment of Racketeering Proceeds Fails (Count III)........47

B. J-M's Conspiracy Claim Concerning Investment Proceeds Fails (Count IV).......48

IV. J-M's State Law Claims Fail................................................................................48

A. J-M Fails to State a Claim for Common Law Fraud (Count VI) ..........................48

B. J-M Fails to State a Claim for Unjust Enrichment or Civil Conspiracy (Counts VII and VIII) ................................................................................................49

CONCLUSION...............................................................................................................50

# TABLE OF AUTHORITIES

**Cases**                                                  **Pages(s)**

*Acres Bonusing, Inc. v. Ramsey*,
2022 WL 17170856 (N.D. Cal. Nov. 22, 2022) ........................................................2

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)................................................................................................31

*Arana v. A.O. Smith Water Prods.*,
176 N.Y.S.3d 772 (N.Y. Sup. Ct. Nov. 17, 2022) .................................................41

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................9, 38

*Ass'n Benefit Servs. v. Caremark Rx, Inc.*,
493 F.3d 841 (7th Cir. 2007) .................................................................................49

*Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*,
15 F.4th 831 (7th Cir. 2021) ..................................................................................32

*Azima v. Dechert LLP*,
2024 WL 4665106 (S.D.N.Y. Sept. 26, 2024)........................................................34

*Bai v. CMB Exp. Infrastructure Inv. Grp. 48, LP*,
2025 WL 959099 (E.D. Cal. Mar. 31, 2025) ........................................................23

*Baker v. IBP, Inc.*,
357 F.3d 685 (7th Cir. 2004) ...........................................................................18, 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................4, 9

*Beydoun v. Rosenthal*,
2024 WL 4907214 (E.D. Mich. Sept. 30, 2024)....................................................26

*Bills v. Hughes*,
2025 WL 1294825 (S.D. Ill. May 5, 2025)............................................................49

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) .................................................................................49

*Boyle v. United States*,
556 U.S. 938 (2009)................................................................................................24

*Brittingham v. Mobil Corp.*,
943 F.2d 297 (3d Cir. 1991)....................................................................................22

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ..................................................................................47

*Browning v. Flexsteel Indus., Inc.*,
955 F. Supp. 2d 900 (N.D. Ind. 2013) ....................................................................23

*Broyles v. Wilson*,
812 F. Supp. 651 (M.D. La. 1993)....................................................................24, 26

*Buck Creek Coal, Inc. v. United Workers of Am.*,
917 F. Supp. 601 (S.D. Ind. 1995)..........................................................................36

*Burford v. Account. Prac. Sales, Inc.*,
786 F.3d 582 (7th Cir. 2015) ..................................................................................15

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972)..........................................................................................11, 12

*Calavan v. First Love Int'l Ministries*,
590 F. Supp. 3d 1131 (N.D. Ill. 2022) ....................................................................30

*Cardenas v. RIA Telecomms., Inc.*,
2001 WL 536043 (N.D. Ill. May 18, 2001)............................................................22

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001)................................................................................................18

*City of Columbia v. Omni Outdoor Advert., Inc.*,
499 U.S. 365 (1991)................................................................................................13

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ..................................................................................49

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
210 F. Supp. 3d 1022 (S.D. Ill. 2016)....................................................................48

*Connick v. Suzuki Motor Co., Ltd.*,
174 Ill.2d 482 (1996) ..............................................................................................48

*Corley v. Rosewood Care Ctr., Inc. of Peoria*,
388 F.3d 990 (7th Cir. 2004) ..................................................................................39

*Cornielsen v. Infinium Cap. Mgmt. LLC*,
916 F.3d 589 (7th Cir. 2019) ..................................................................................10

*Costal States Mktg., Inc. v. Hunt*,
694 F.2d 1358 (5th Cir. 1983) ...................................................................................12

*Crichton v. Golden Rule Ins. Co.*,
2006 WL 2349961 (S.D. Ill. Aug. 11, 2006) .............................................................35

*Crichton v. Golden Rule Ins. Co.*,
2007 WL 9724909 (S.D. Ill. Aug. 29, 2007) .............................................................20

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) .........................................................................10, 22, 41

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013) ......................................................................................19

*Domanus v. Locke Lord LLP*,
847 F.3d 469 (7th Cir. 2017) .....................................................................................35

*Drobny v. JP Morgan Chase Bank, NA*,
929 F. Supp. 2d 839 (N.D. Ill. 2013) ...................................................................33, 34

*E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ...................................................................................................11

*Eclectic Props. v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .....................................................................................33

*El-Issa v. Compaq Computer Corp.*,
1997 WL 790730 (N.D. Ill. Dec. 19, 1997) ...............................................................20

*Emery v. Am. Gen. Fin., Inc.*,
134 F.3d 1321 (7th Cir. 1998) ...................................................................................21

*Evans v. City of Chicago*,
434 F.3d 916 (7th Cir. 2006) ................................................................................17, 31

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) .....................................................................................................9

*Figueroa Ruiz v. Alegria*,
896 F.2d 645 (1st Cir. 1990) ........................................................................................9

*Fitzgerald v. Chrysler Corp.*,
116 F.3d 225 (7th Cir. 1997) ................................................................................19, 20

*Fitzgerald v. Chrysler Corp.*,
1996 WL 473456 (N.D. Ill. Aug. 16, 1996) ............................................................1, 9

*Florance v. Barnett*,
  2023 WL 7017085 (7th Cir. Oct. 25, 2023)............................................................................50

*Ford Motor Co. v. Knight L. Grp.*,
  2025 WL 3306280 (C.D. Cal. Nov. 24, 2025)..............................................................12, 13, 23

*Ford Motor Co. v. Mikhov*,
  2026 WL 691879 (C.D. Cal. Mar. 10, 2026)......................................................................23, 26

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) .............................................................................................11

*G&G Closed Cir. Events, LLC v. Castillo*,
  327 F. Supp. 3d 1119 (N.D. Ill. 2018) .................................................................................30

*Gabovitch v. Shear*,
  70 F.3d 1252, 1995 WL 697319 (1st Cir. 1995).................................................................34

*Gamboa v. Velez*,
  457 F.3d 703 (7th Cir. 2006) ...............................................................................................17

*Gomez v. Guthy-Renker LLC*,
  2015 WL 4270042 (C.D. Cal. July 13, 2015).......................................................................21

*Goren v. New Vision Int'l, Inc.*,
  156 F.3d 721 (7th Cir. 1998) ....................................................................................... *passim*

*Green v. Morningstar, Inc.*,
  2018 WL 1378176 (N.D. Ill. Mar. 16, 2018).......................................................................22

*Henry v. Farmer City State Bank*,
  808 F.2d 1228 (7th Cir. 1986) .............................................................................................15

*In re ClassicStar Mare Lease Litig.*,
  727 F.3d 473 (6th Cir. 2013) ...............................................................................................18

*In re: Gen. Motors LLC Ignition Switch Litig.*,
  2016 WL 3920353 (S.D.N.Y. July 15, 2016) .......................................................................20

*In re Innovatio IP Ventures, LLC Patent Litig.*,
  921 F. Supp. 2d 903 (N.D. Ill. 2013) ..............................................................................11, 12

*In re Jamster Mktg. Litig.*,
  2009 WL 1456632 (S.D. Cal. May 22, 2009).......................................................................33

*In re Terazosin Hydrochloride Antitrust Litig.*,
  335 F. Supp. 2d 1336 (S.D. Fla. 2004) ................................................................................16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., and
    Prods. Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011) ...................................................................23

*Int'l Bhd. of Teamsters, Local 734 v. Philip Morris, Inc.*,
    196 F.3d 818 (7th Cir. 1999) ...............................................................................11

*J-M Mfg. Co., Inc. v. Simmons Hanly Conroy, LLP*,
    2025 WL 843854 (N.D. Ill. Mar. 18, 2025)................................................... *passim*

*Jackson v. Evans*,
    2024 WL 4252798 (N.D. Ill. Sept. 20, 2024) .........................................................25

*Jackson v. Jersey Community Hosp.*,
    631 F. Supp. 3d 616 (S.D. Ill. 2022).....................................................................33

*Jenkins v. Wigginton*,
    2026 WL 507360 (S.D. Ill. Feb. 24, 2026).......................................................17, 25, 45, 51

*Jennings v. Emry*,
    910 F.2d 1434 (7th Cir. 1990) ...............................................................9, 21, 25, 36

*Jepson, Inc. v. Makita Corp.*,
    34 F.3d 1321 (7th Cir. 1994) ...............................................................27, 29, 32

*Kearney v. Foley & Lardner, LLP*,
    590 F.3d 638 (9th Cir. 2009) ................................................................................12

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018).............................................................................33, 34

*Knauf Insulation, LLC v. Johns Manville Corp.*,
    2019 WL 10947457 (S.D. Ind. Apr. 30, 2019).......................................................16

*Lachmund v. ADM Inv. Servs.*,
    191 F.3d 777 (7th Cir. 1999) ................................................................................47

*Lax v. Mayorkas*,
    20 F.4th 1178 (7th Cir. 2021) ................................................................................9

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
    238 F.3d 363 (5th Cir. 2001) ................................................................................27

*Luna v. 4C Kinzie Inv. LLC*,
    2019 WL 1239770 (N.D. Ill. Mar. 18, 2019).........................................................22

*Martis v. Grinnell Mut. Reinsurance Co.*,
    388 Ill. App. 3d 1017 (2009) ................................................................................49

*Masterson v. Cheetah Mobile Inc.*,
   2018 WL 5099505 (C.D. Cal. June 27, 2018) ........................................................31

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) .................................................................................9

*McDonald v. Schencker*,
   18 F.3d 491 (7th Cir. 1994) .................................................................................39

*Meier v. Musberger*,
   588 F. Supp. 2d 883 (N.D. Ill. 2008) ....................................................................30

*Menzies v. Seyfarth Shaw LLP*,
   197 F. Supp. 3d 1076 (N.D. Ill. 2016) ....................................................................9

*Menzies v. Seyfarth Shaw LLP*,
   943 F.3d 328 (7th Cir. 2019) ........................................................................ *passim*

*Mercatus Grp., LLC v. Lake Forest Hosp.*,
   695 F. Supp. 2d 811 (N.D. Ill. 2010) ...............................................................11, 16

*Midwest Grinding Co., Inc. v. Spitz*,
   976 F.2d 1016 (7th Cir. 1992) ...............................................................21, 33, 38, 46

*Miller Pipeline Corp. v. British Gas PLC*,
   69 F. Supp. 2d 1129 (S.D. Ind. 1999) ...................................................................12

*Morgan v. J-M Mfg. Co., Inc.*,
   60 Cal. App. 5th 1078 (Ct. App. 2021) ..............................................................1, 16

*Neder v. United States*,
   527 U.S. 1 (1999) ...............................................................................................27

*New W., L.P. v. City of Joliet*,
   491 F.3d 717 (7th Cir. 2007) ....................................................................10, 11, 14, 15

*Nolte v. Pearson*,
   994 F.2d 1311 (8th Cir. 1993) ..............................................................................38

*Paul S. Mullin & Assocs., Inc. v. Bassett*,
   632 F. Supp. 532 (D. Del. 1986) ..........................................................................34

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ...............................................................................32

*Prof'l Real Est Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) .............................................................................................15

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*,
   757 F. Supp. 1499 (N.D. Ill. 1990) ........................................................................41

*Rajaratnam v. Motley Rice, LLC*,
   449 F. Supp. 3d 45 (E.D.N.Y. 2020) ......................................................................34

*Raney v. Allstate Ins. Co.*,
   370 F.3d 1086 (11th Cir. 2004) .............................................................................34

*Rao v. BP Prods. N. Am., Inc.*,
   589 F.3d 389 (7th Cir. 2009) .................................................................................47

*Ratfield v. U.S. Drug Testing Laboratories, Inc.*,
   2024 WL 640955 (N.D. Ill. Feb. 15, 2024) .............................................19, 20, 42

*Ravet v. Solomon, Ward, Seidenwurm & Smith, LLP*,
   2007 WL 2088381 (S.D. Cal. July 17, 2007) ........................................................26

*Ray v. Karris*,
   780 F.2d 636 (7th Cir. 1985) ...........................................................................42, 44

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .......................................................................35, 37, 41, 44

*Reynolds v. Condon*,
   908 F. Supp. 1494 (N.D. Iowa 1995) .....................................................................38

*Riverwoods Chappaqua Corp. v. Marine Midland Bank*,
   30 F.3d 339 (2d Cir. 1994) ....................................................................................19

*Robinson v. City Colls. of Chi.*,
   656 F. Supp. 555 (N.D. Ill. 1987) ..........................................................................29

*Rocha v. FedEx Corp.*,
   15 F. Supp. 3d 796 (N.D. Ill. 2014) ..................................................................22, 25

*Rockford v. Mallinckrodt ARD, Inc.*,
   360 F. Supp. 3d 730 (N.D. Ill. 2019) .....................................................................30

*Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*,
   863 F. Supp. 2d 732 (N.D. Ill. 2012) ..............................................................12, 14, 16

*Salinas v. United States*,
   522 U.S. 52 (1997) .................................................................................................46

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ...............................................................................................17

*Siegel v. Shell Oil Co.*,
480 F. Supp. 2d 1034 (N.D. Ill. 2007) ................................................................27

*Slaney v. Int'l Amateur Athletic Fed'n*,
244 F.3d 580 (7th Cir. 2001) ..................................................................26, 35, 39

*Sosa v. DirecTV*,
437 F.3d 923 (9th Cir. 2006) ..............................................................................12

*Spiegel v. Cont'l Illinois Nat'l. Bank*,
609 F. Supp. 1083 (N.D. Ill. 1985) .....................................................................34

*Stachon v. United Consumers Club, Inc.*,
229 F.3d 673 (7th Cir. 2000) ....................................................................... *passim*

*Taha v. Int'l Bhd. of Teamsters, Loc. 781*,
947 F.3d 464 (7th Cir. 2020) ..............................................................................38

*Tocco v. Richman Greer Pro. Ass'n*,
553 F. App'x 473 (6th Cir. 2013) ........................................................................49

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
475 F.3d 824 (7th Cir. 2007) ..............................................................................48

*U.S. Futures Exch., LLC v. Bd. of Trade of Chi., Inc.*,
953 F.3d 955 (7th Cir. 2020) ....................................................................11, 13, 16

*Uni\*Quality, Inc v. Infotronx, Inc.*,
974 F.2d 918 (7th Cir. 1992) ....................................................................27, 29, 31, 32

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013) ....................................................................... *passim*

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965) .............................................................................................11

*United States v. Clark*,
140 F.4th 395 (7th Cir. 2025) ..............................................................................27

*United States v. Jimenez Recio*,
537 U.S. 270 (2003) .............................................................................................46

*United States v. Koen*,
982 F.2d 1101 (7th Cir. 1992) .............................................................................31

*United States v. Lundberg*,
990 F.3d 1087 (7th Cir. 2021) .............................................................................39

- xi -

*United States v. Pendergraft*,
297 F.3d 1198 (11th Cir. 2002) ...................................................................34

*United States v. Prime Healthcare Servs., Inc.*,
2020 WL 11884833 (C.D. Cal. 2020)............................................................41

*United States v. Swan*,
250 F.3d 495 (7th Cir. 2001) .................................................................35, 37

*United States v. Turkette*,
452 U.S. 576 (1981)........................................................................17, 21, 24

*United States ex rel. USN4U, LLC v. Wolf Creek Fed. Servs., Inc.*,
34 F.4th 507 (6th Cir. 2022) .......................................................................29

*Veal v. First Am. Sav. Bank*,
914 F.2d 909 (7th Cir. 1990) .......................................................................28

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
20 F.3d 771 (7th Cir. 1994) ..............................................................27, 33, 48

*W. Town Bank & Tr. v. Forman*,
2020 WL 6585655 (D.S.C. Nov. 10, 2020).....................................................26

*White v. Hill*,
2023 WL 4491469 (S.D. Ill. July 12, 2023) ...................................................45

*Williams v. Aztar Ind. Gaming Corp.*,
351 F.3d 294 (7th Cir. 2003) .................................................................26, 29

*Williams v. J-M Mfg. Co., Inc.*,
102 Cal. App. 5th 250 (Ct. App. 2024)...................................................1, 14, 16

*Williams v. J-M Mfg. Co., Inc.*,
321 Cal. Rptr. 3d 254 (Cal. Ct. App. 2024).....................................................41

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
536 F.3d 663 (7th Cir. 2008) .......................................................................49

**Statutes**

18 U.S.C. § 1962(a) ............................................................................46, 47, 48

18 U.S.C. § 1962(c) ...........................................................................2, 3, 17, 45

18 U.S.C. § 1962(d) ....................................................................................48

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................................... *passim*

**PRELIMINARY STATEMENT**

Plaintiff J-M Manufacturing Company, Inc. ("J-M") brings RICO and related claims premised on underlying asbestos litigation that it did not win, chose not to litigate, and settled. Faced with that record, J-M has resorted to the "thermonuclear device" of the federal RICO statute, *Fitzgerald v. Chrysler Corp.*, 1996 WL 473456, at *3 n.2 (N.D. Ill. Aug. 16, 1996), *aff'd*, 116 F.3d 225 (7th Cir. 1997), to chill its litigation adversaries—a law firm and its lawyers representing individuals who suffered or died from asbestos-related illnesses. This is now the second time in as many years that J-M has targeted its litigation adversaries with a RICO lawsuit, and this iteration is even weaker than the first. *See J-M Mfg. Co., Inc. v. Simmons Hanly Conroy, LLP*, 2025 WL 843854 (N.D. Ill. Mar. 18, 2025) (dismissing initial complaint with a motion to dismiss an amended complaint pending).

J-M is no stranger to litigation from the asbestos harm caused by its products. Asbestos exposure, including from an asbestos-cement pipe ("ACP") sold by J-M, causes a painful, incurable, and ultimately deadly cancer called mesothelioma. Juries nationwide have returned verdicts holding J-M accountable for this harm, which may not develop until decades after exposure.[1] Juries and courts have also rejected the same arguments that J-M makes in its Complaint here—that a plaintiff's alleged work history made it impossible to be exposed to J-M's products. *See infra* Section I.B (identifying court decisions and jury verdicts sustaining claims based on, among other things, secondary exposure to asbestos products); Section II.C.2. For almost a decade, Defendant The Gori Law Firm ("Gori Law") has also successfully litigated

---

[1]   *See, e.g.*, Ex. 1 (J. on Special Verdict, *Metzger v. J-M Mfg. Co., Inc.*, Case No. 19STCV27717 (Cal. Super. Ct. L.A. Cnty. Sept. 27, 2023) ($8.8 million in damages against J-M and others)); *Morgan v. J-M Mfg. Co., Inc.*, 60 Cal. App. 5th 1078, 1081 (Ct. App. 2021) ($22.2 million judgment against J-M); *Williams v. J-M Mfg. Co., Inc.*, 102 Cal. App. 5th 250, 250 (Ct. App. 2024) ($2.6 million in damages against J-M and other defendants).

- 1 -

numerous cases against J-M and has obtained significant settlements to compensate victims, which J-M purports to make the basis of its claims here.  Compl. ¶¶ 3-5, 33-35.

Courts are wary of RICO claims asserted against litigation adversaries and deeply scrutinize such lawsuits at an early stage.  And for good reason: RICO claims based on underlying litigation activity impermissibly chill the exercise of fundamental First Amendment rights.  As one court put it, if litigation activities could serve as a basis for a RICO claim, almost any lawsuit "could spawn a retaliatory action, which would inundate the federal courts with procedurally complex RICO pleadings, engender wasteful satellite litigation, and spawn ad infinitum litigation with each party claiming that the opponent's previous action was malicious and meritless." *Acres Bonusing, Inc. v. Ramsey*, 2022 WL 17170856, at *11 (N.D. Cal. Nov. 22, 2022) (cleaned up). Such claims also undermine finality and promote collateral litigation by allowing dissatisfied litigants to relitigate matters decided or settled in prior judicial proceedings.

The most fundamental problem with J-M's Complaint—as held in a series of Supreme Court and Seventh Circuit cases—is that all the alleged harms identified in the Complaint are based on "petitioning activity" (*i.e.*, litigation activity) protected by the First Amendment and the *Noerr-Pennington* doctrine.  *Noerr-Pennington* recognizes a party's right to litigate in court without fear of reprisal and requires dismissal of claims predicated on underlying litigation activity to avoid chilling the exercise of that right.  *Noerr-Pennington* bars this action in its entirety, as it is premised solely on Defendants' litigation conduct against J-M, and the Complaint does not, and cannot, allege that the narrow "sham litigation" exception to *Noerr-Pennington* applies.

J-M's claims fail on their face for multiple other reasons.  The substantive RICO claims brought under 18 U.S.C. § 1962(c) suffer from several defects, any one of which requires dismissal.

*First*, J-M's enterprise theories—that a law firm or its lawyers, which represented individuals harmed by asbestos products in settled cases, somehow constitute a RICO enterprise—are unfounded. A threshold problem is that J-M has not plausibly alleged an enterprise distinct from the alleged persons conducting the enterprise, as § 1962(c) requires. This is because J-M alleged that Gori Law is a RICO person participating in racketeering activities, which is fatal to both of J-M's enterprise theories as a matter of law. Beyond the distinctiveness issue, upholding J-M's allegations would represent an unprecedented (and dangerous) expansion of civil RICO liability. A lawyer's routine representation of a client for the purpose of litigating a legitimate lawsuit is miles away from what the RICO statute was created to combat: the infiltration of legitimate business organizations by organized crime. Courts regularly reject attempts to characterize routine business activities, like those at issue here, as RICO enterprises.

*Second*, J-M does not allege racketeering activity—*i.e.*, predicate acts of wire and mail fraud—with the particularity required by Rule 9(b). J-M's Complaint is littered with conclusory allegations of fraud and hyperbolic allegations about a "bounty system" and "fraud playbook," but J-M never identifies any specific misrepresentations in furtherance of a scheme to defraud, as it must. J-M purports to describe a conspiracy to have "depo attorneys" instruct clients to make false product identifications, but J-M never identifies a single instance in which this occurred or a single case that was impacted or settled as a result. J-M identifies twelve "sample cases" it claims are representative of the scheme, but there are no allegations that those cases involved any false product identifications. In fact, J-M premises its arguments on ***truthful information*** contained in Gori Law's pleadings and discovery responses, such as accurate statements about a plaintiff's work history, which is hardly the stuff of wire and mail fraud. Equally problematic, J-M fails to connect the sample cases to any particular settlement or injury, in violation of basic pleading requirements.

- 3 -

*Third*, J-M fails to allege that each individual Defendant participated in the conduct of a criminal RICO enterprise or engaged in a pattern of racketeering activity. J-M's principal allegation against the Individual Defendants is that they engaged in the routine conduct of lawyers, such as filing complaints or serving summonses. On the rare occasions that J-M attempts to connect an Individual Defendant to any purported misconduct, the allegations are conclusory and accompanied by no factual support or specificity, again in violation of basic pleading requirements.

J-M's remaining claims fail for similar reasons. J-M's RICO conspiracy claim fails because J-M has not adequately alleged a substantive RICO violation; J-M cannot maintain claims related to the purported reinvestment of racketeering proceeds because it has not plausibly alleged racketeering acts; J-M's common law fraud claim fails for failure to identify a specific misrepresentation that J-M relied on that caused it harm; and the unjust enrichment and civil conspiracy claims fail because they are derivative of all the other claims.

For these reasons, the Court should dismiss this ill-conceived and retaliatory lawsuit with prejudice. Allowing the case to proceed would come at the serious cost of further harming Defendants' reputations and chilling victims and law firms from bringing legitimate claims against J-M. It also risks embarking on discovery across hundreds of cases going back almost a decade, which likely would require years of litigation and raise severe attorney-client privilege issues. Courts require much more than the allegations J-M has offered "before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## SUMMARY OF ALLEGATIONS

According to the Complaint, Defendants—a law firm and its lawyers—violated RICO by representing asbestos victims in litigation against J-M and receiving favorable settlements in those litigations. Compl. ¶¶ 5, 33-35. Between 2018 and 2024, Gori Law filed more than 400 lawsuits

- 4 -

against J-M on behalf of plaintiffs or decedents who were suffering or died from illnesses resulting from asbestos exposure. *Id*. ¶ 4. J-M does not allege that it won any of those cases or that a court ever concluded that those cases were without merit or brought for an improper purpose. Rather, J-M alleges that the parties "typically settled" those cases in "batches," meaning that J-M agreed to pay out on some cases, and Gori Law agreed to dismiss others "in exchange for an amount of money that the Gori Firm was free to distribute however it saw fit among all of the plaintiffs in the batch." *Id*. ¶ 53. Thus, the Complaint is predicated solely on underlying asbestos litigation that J-M, represented by experienced counsel, voluntarily chose to settle and not litigate.[2]

### A.    J-M Fails to Connect Any Settled Cases to the Purported Fraudulent Scheme

The Complaint alleges that Gori Law used frivolous cases to structure "batch settlements," though it never identifies an allegedly frivolous case that was part of such a settlement. *Id*. ¶¶ 35, 53-55. J-M alleges that frivolous cases were developed through what it coins the "bounty system" and "fraud playbook," which it allegedly learned about from a former Gori Law attorney who worked as a depo attorney. *Id*. ¶¶ 35-52. The source's information is framed as double-hearsay— that is, what other unidentified Gori Law attorneys told or trained the depo attorneys to do, not what the depo attorneys actually did. *See, e.g.*, *id*. ¶¶ 16, 41-45.

According to that source, the bounty system involved compensating depo attorneys who "coached" clients to provide deposition testimony that they were exposed to products belonging to certain companies, including J-M, on a so-called "bounty list." *Id*. ¶¶ 37-38. The source also discussed how depo attorneys were allegedly "trained" for the client intake process, which J-M has named the "fraud playbook." *Id*. ¶¶ 41-52. This training involved encouraging prospective

---

[2]    The Complaint alleges instances in which courts found misconduct in asbestos litigation from decades ago. Compl. ¶¶ 2, 6-16. None of those cases involved Gori Law or any of its attorneys.

clients to identify products to which they were exposed in product identification booklets, ensuring those clients signed "trust affidavits" concerning those exposures, leaving product lists with clients so they would "be prepared" at "an eventual deposition," and preparing clients for certain questions at those depositions. *Id.* ¶¶ 42-52.[3]

The Complaint does not identify a single case in which any of the foregoing conduct occurred, let alone a case that was part of a batch settlement. The Complaint also does not identify with specificity any mailing or wire that was sent or received related to this activity. Instead, the Complaint identifies twelve "sample cases" that some of the Individual Defendants were involved in litigating. *Id.* ¶¶ 60-70. There is no allegation that any of the foregoing conduct occurred in those cases. Rather, the Complaint asserts that the sample cases were meritless because, based on the complaints or discovery responses, the plaintiff's or decedent's work history ended before J-M existed or had no nexus to J-M's products, or there was no allegation of exposure to J-M's products. *Id.* ¶¶ 60-70. J-M includes no allegations that those cases were settled or dismissed.

**B.      The Complaint's RICO Enterprise Allegations Are Deficient**

Based on this conduct, the Complaint asserts two enterprise theories: that (i) Gori Law is a legal entity enterprise involving Ms. Gori-Gregory and Ms. Salger (the "Gori Firm Enterprise," *id.* ¶¶ 76-83) or, in the alternative; (ii) the Individual Defendants and unidentified depo attorneys who participated in the bounty system formed an association-in-fact enterprise (the "Bounty System Enterprise," *id.* ¶¶ 84-86). Both enterprise theories are premised on the same conduct discussed above. However, there are no factual allegations supporting the claim that the Individual Defendants were acting in furtherance of any purported RICO enterprise separate and apart from

---

[3]      The Complaint also alleges that Gori Law entered into "no-poach" and referral agreements with other law firms as part of the fraudulent scheme. Compl. ¶¶ 41, 56, 89. But J-M once again does not allege facts supporting that these arrangements were anything other than a standard business practice.

their work as lawyers for a law firm.  There also is no allegation that any of the Individual Defendants communicated about any purported enterprise, much less acted in a coordinated manner with a unified purpose to defraud J-M.  In fact, J-M seeks to premise the existence of an enterprise on the routine conduct of lawyers, such as hiring attorneys, setting firm policy, negotiating with referral firms, and making decisions about what cases to file.  *Id.* ¶¶ 80-81.

### C.      The Defendant-Specific Allegations Are Sparse and Conclusory

The Complaint repeatedly refers to unidentified "depo attorneys" or "Gori attorneys," without specifying whether any of that conduct involved the Individual Defendants.  *See, e.g.*, *id.* ¶¶ 36-37, 41-45, 48-54, 59, 72(a)(ii).  Most of the Complaint's Defendant-specific allegations have no factual support, and several are made on information and belief.  *See e.g.*, *id.* ¶¶ 90, 95.

**Ms. Gori-Gregory.**  J-M alleges that Ms. Gori-Gregory, Gori Law's Principal Partner and Owner, developed and implemented the bounty system and made "strategic decisions that enabled the fraudulent scheme."  *Id.* ¶¶ 23, 39, 90.  Yet, J-M provides no factual allegations supporting those assertions, such as identifying what strategic decisions she purportedly made or what she allegedly did to develop and implement the bounty system.  J-M claims that Ms. Gori-Gregory sent and received communications via interstate wires related to the purported fraudulent scheme, such as communications about filing lawsuits, but the Complaint does not identify a single such communication.  *Id.* ¶ 90.  The only other allegations about Ms. Gori-Gregory are that she engaged in the routine conduct of a lawyer managing a law firm, such as making personnel decisions, directing advertising, setting firm policy, and deciding what cases to file and settle.  *Id.* ¶ 80.

**Ms. Salger.**  J-M alleges in conclusory fashion without factual support that Ms. Salger, Gori Law's Managing Partner, developed and implemented the bounty system.  *Id.* ¶ 39.  The Complaint also alleges that Ms. Salger litigated five of the sample cases by signing the complaints, mailing notices of attorneys' liens, serving discovery responses, and filing a motion to set a trial

date. *Id.* ¶¶ 60, 63, 65, 68, 92(a)-(h) (identifying the *Mallam*, *Pruitt*, *Robb*, *Moraski*, and *Ramirez* cases).  J-M alleges that she knew "there was no basis to prosecute" these cases and that she told depo attorneys "to coach plaintiffs to falsely identify exposure to bounty defendants," but offers no facts supporting those assertions. *Id.* ¶¶ 92(h)-(i).  The remaining allegations about Ms. Salger are that she engaged in the routine business of a lawyer concerning personnel decisions, firm policy, and deciding what cases to file and settle. *Id.* ¶ 80.

**Ms. Beavers.**   J-M claims that Ms. Beavers, a Gori Law partner, supervised the implementation of the bounty system and trained depo attorneys but provides no factual allegations supporting those assertions. *Id.* ¶¶ 25, 39, 93(g).  The Complaint does not, for example, allege when any of those purported training sessions occurred, who was present, and how they furthered the purported fraudulent scheme.  The only other allegations about Ms. Beavers are that she litigated several of the sample cases by issuing summonses or signing and serving discovery responses. *Id.* ¶¶ 60, 63, 65, 68, 93(a)-(f) (identifying the *Mallam*, *Pruitt*, *Robb*, *Moraski*, and *Ramirez* cases).

**Mr. Steinmeyer.**  The allegations against Mr. Steinmeyer, a Gori Law partner, are virtually identical to those against Ms. Beavers.  J-M claims, without factual support or specificity, that Mr. Steinmeyer implemented the bounty system and trained depo attorneys. *Id.* ¶¶ 26, 39, 94(e).  The remaining allegations are that he litigated some of the sample cases, though his only purported role in those cases was to "issue[] a summons to J-M." *Id.* ¶¶ 60, 65, 94(a)-(d) (identifying the *Mallam*, *Pruitt*, *Robb*, and *Moraski* cases).

**Mr. Layloff.**   J-M alleges that Mr. Layloff negotiated and settled cases bundled with frivolous ones between 2018 and 2025, but never identifies a single case that was settled involving Mr. Layloff or what he did to facilitate the settlement. *Id.* ¶ 27.  The Complaint also claims that

- 8 -

Mr. Layloff sent wires in interstate commerce in furtherance of those settlements but again never identifies a single wire or its contents. *Id.* ¶¶ 95(a)-(b). J-M also alleges that Mr. Layloff trained depo attorneys but provides no facts or specifics concerning those claims. *Id.* ¶ 95(c). As with the other Individual Defendants, there are no allegations that Mr. Layloff communicated with any other Defendant about the purported fraudulent scheme or any RICO enterprise.

## LEGAL STANDARD

In RICO cases, motions to dismiss perform a critical function in weeding out claims. *See, e.g.*, *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (the complexity of RICO "does not give litigants license to plead by means of obfuscation"); *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Fitzgerald*, 1996 WL 473456, at *3 n.2 (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)).

Even apart from the specific commands of RICO caselaw, dismissal is appropriate if the complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While the Court must "accept all well-pleaded facts as true," it "need not accept as true statements of law or unsupported conclusory factual allegations." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021) (citation omitted); *see McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."). Moreover, when a defendant is engaging in activity that is facially legitimate, the complaint must do "far more" than allege the defendant "perform[ed] otherwise 'legitimate' services." *Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1103 (N.D. Ill. 2016); *see*

- 9 -

*Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) ("[A]ctivities consistent with the existence of a business partnership [are] not the prototypical RICO violation in which the defendant seizes control of an enterprise to accomplish an illegal purpose . . . .").

Having attempted to state a RICO claim based on alleged mail and wire fraud, J-M faces another high barrier: RICO claims sounding in fraud must meet Rule 9(b)'s heightened pleading standard. Under Rule 9(b), a plaintiff must provide "precision and some measure of substantiation to each fraud allegation," or, in other words, the "who, what, when, where, and how of the alleged fraud." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (cleaned up). Group pleading is also impermissible—a plaintiff must differentiate its allegations to inform each defendant separately of the allegations against them. *Cornielsen v. Infinium Cap. Mgmt. LLC*, 916 F.3d 589, 599 (7th Cir. 2019).

## **ARGUMENT**

### I.   ***NOERR-PENNINGTON* BARS J-M'S RICO COMPLAINT BECAUSE IT IS PREDICATED ON UNDERLYING LITIGATION ACTIVITY**

J-M's RICO action—which is predicated on J-M's settlement of litigated cases that lawyers filed on behalf of asbestos victims—is barred by the *Noerr-Pennington* doctrine. The doctrine provides First Amendment immunity to judicial branch petitioning. *New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007). Indeed, the *Noerr-Pennington* doctrine provides J-M with the same protection as it hurls falsities at Defendants in the Complaint.

J-M tries to latch on to the narrow exception to that broad doctrine, which allows claims predicated on litigation activity when the underlying litigation is a sham. But J-M does not plausibly allege that the sham exception applies here. J-M supplied ACP for years; individuals predictably suffered adverse health effects as a result; Defendants filed lawsuits against J-M on behalf of injured individuals; and J-M voluntarily settled many of those cases and Gori Law agreed

to dismiss other cases as part of global resolutions. *See* Compl. ¶¶ 21, 53-55. J-M has no plausible basis to allege these underlying litigations were objectively baseless and, in fact, does not identify a single adverse ruling against Defendants' clients in any case.

### A.    The *Noerr-Pennington* Doctrine Applies to the Conduct Alleged in the Complaint

Under the *Noerr-Pennington* doctrine, persons who petition any branch of government for redress, including the judicial branch, are immunized from liability for their petitioning activities. *See E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972); *New W., L.P.*, 491 F.3d at 722 ("[T]he *Noerr-Pennington* doctrine protects litigation, lobbying, and speech."); *Mercatus Grp., LLC v. Lake Forest Hosp.*, 695 F. Supp. 2d 811, 818 (N.D. Ill. 2010), *aff'd*, 641 F.3d 834 (7th Cir. 2011) (similar). As to litigation activity, the doctrine seeks to ensure citizens enjoy the right of access to the courts without fear of prosecution. *Mercatus Grp., LLC*, 641 F.3d at 846-47; *U.S. Futures Exch., LLC v. Bd. of Trade of Chi., Inc.*, 953 F.3d 955, 963 (7th Cir. 2020).

This broad immunity prevents disgruntled litigants like J-M from re-litigating cases they voluntarily and willingly settled. The *Noerr-Pennington* doctrine also bars RICO claims, like the present one, predicated on underlying litigation activity. *See Int'l Bhd. of Teamsters, Local 734 v. Philip Morris, Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) ("Although the *Noerr-Pennington* doctrine originated in antitrust law, its rationale is equally applicable to RICO suits."). And it bars claims against parties in the underlying litigation as well as their lawyers. *See Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1186 (9th Cir. 2005).

*Noerr-Pennington* immunity bars J-M's lawsuit. J-M's RICO claim burdens First Amendment petitioning activity. *See In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp.

- 11 -

2d 903, 911 (N.D. Ill. 2013) (holding RICO claims restricted patent holders' right to assert infringement claims); *Sosa v. DirecTV*, 437 F.3d 923, 932 (9th Cir. 2006) (RICO claims "quite plainly burden" petitioning activity). The Complaint also is solely based on Defendants' alleged conduct in filing, litigating, and settling lawsuits. J-M alleges that Defendants engaged in racketeering by making untrue statements about J-M (Compl. ¶¶ 60-70, 90-96), allegedly "coach[ing]" clients in depositions (*id.* ¶¶ 44, 48-52, 57) and inducing J-M to settle (*id.* ¶¶ 53-55). Thus, J-M's entire Complaint is premised on Defendants' use of "the channels and procedures of state and federal . . . courts to advocate [their clients'] causes and points of view"—activity protected by the *Noerr-Pennington* doctrine. *Cal. Motor Transp. Co.*, 404 U.S. at 511; *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 743 (N.D. Ill. 2012) (settlements); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009) (discovery communications and trial advocacy protected by *Noerr-Pennington*); *Ford Motor Co. v. Knight L. Grp.*, 2025 WL 3306280, at *7-8, *13-16 (C.D. Cal. Nov. 24, 2025) (dismissing RICO claims on *Noerr-Pennington* grounds where activities were premised, in part, on settlements).

J-M alleges that some of Defendants' conduct is "independently actionable" because it occurred before litigation was filed or contemplated. Compl. ¶ 57. But pre-litigation conduct, too, is protected by *Noerr-Pennington*. *In re Innovatio IP Ventures*, 921 F. Supp. 2d at 913; *Miller Pipeline Corp. v. British Gas PLC*, 69 F. Supp. 2d 1129, 1138 (S.D. Ind. 1999) ("Given that petitioning immunity protects . . . litigation, it would be absurd to hold that it does not protect those acts reasonably and normally attendant upon effective litigation," including activities done in anticipation of it (quoting *Costal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983))).

Regardless, the conduct about which J-M complains—*i.e.*, training programs for depositions and the client intake process—is not actionable unless connected to a litigated case

against J-M and does not serve as the basis for J-M's claims.  In fact, J-M does not allege that any of its purported injuries arose outside of litigated cases filed by Defendants.  *See* Compl. ¶ 106.  Accordingly, Defendants' underlying conduct as alleged by J-M is protected by *Noerr-Pennington* immunity.  *See Ford Motor Co.*, 2025 WL 3306280, at *8 (rejecting argument that RICO claims were premised on a "fraudulent billing scheme" and, therefore, not petitioning activity because the underlying conduct allegedly causing plaintiff's injury—billing activity—was "litigation").

### B.    J-M Does Not, and Cannot, Plausibly Allege That the Narrow "Sham" Litigation Exception Applies to the Underlying Litigation

The broad *Noerr-Pennington* doctrine is subject to an "extraordinarily narrow" "sham exception." *U.S. Futures Exch., LLC*, 953 F.3d at 963 (cleaned up).  "A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all, not one who genuinely seeks to achieve his governmental result, but does so through improper means." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (cleaned up).  This exception applies where: (i) the underlying litigation was objectively baseless and brought with improper subjective intent; or (ii) defendants allegedly made intentionally fraudulent misrepresentations that were material and altered the outcome of the proceeding.  *U.S. Futures Exch., LLC*, 953 F.3d at 960, 963.  Neither circumstance applies here.

J-M does not, and cannot, allege that Defendants and their clients were uninterested in favorable judicial action in the underlying litigation.  Nor does it plausibly allege that the underlying litigation was "objectively baseless." *Id.* (objectively baseless means "frivolous efforts," not "colorable suits" "reasonably calculated to elicit a favorable outcome").  To the contrary, Defendants brought claims on behalf of clients who suffered adverse health effects from asbestos-ridden products, and J-M acknowledges that it voluntarily settled many of those lawsuits with Defendants.  Compl. ¶¶ 55, 104.  Lawsuits terminating in favorable settlements "by definition,

- 13 -

cannot be objectively meritless." *See Rubloff*, 863 F. Supp. 2d at 743 ("[Plaintiff] paid $200,000 and made significant concessions regarding the design of the development to settle the suits. That settlement is fatal to the sham litigation argument."); *New W., L.P.*, 491 F.3d at 722 ("New West has settled (for a substantial payment) one of the suits that Joliet filed in state court, so that one cannot have been a sham . . . .").

J-M identifies several cases it claims were "objectively baseless" because the plaintiffs' work histories ended before J-M existed, such that the plaintiffs could not have been exposed to J-M's products. But an individual can be exposed to J-M's products separate and apart from their occupations, including through jobsite bystander exposure or take home/secondary exposure (*i.e.*, exposure to asbestos through contact with another individual or the individual's clothing). This is not speculation. In 2024, a jury returned a substantial verdict (subsequently affirmed) against J-M premised on the plaintiff's secondary exposure from his brother's work with ACP for over 20 years. *Williams v. J-M Mfg. Co., Inc.*, 102 Cal. App. 5th 250 (2024).[4] Moreover, the Circuit Court in Madison County, Illinois—the same court in which J-M has alleged Defendants filed "objectively baseless" cases (Compl. ¶¶ 3, 4, 47, 60, 65, 70(a)-(d))—issued a Standing Order in which interrogatories are automatically served on plaintiffs in asbestos cases that seek, among other things, discovery concerning potential secondary exposure. *See* Ex. 2 at 102-03, 110-12.

J-M here is simply raising a ***potential*** defense to a claim, which is miles away from plausibly alleging that a case was objectively baseless. J-M could have litigated this issue, but it strategically chose not to. In several of the cases, J-M either did not move to dismiss the claims

---

[4]     *See also* Ex. 3 at 9 n.3 (Mem. in Supp. of Def. J-M's Mot. Summ. J., *Williams v. A.H. Voss Co.*, No. RG19032329 (Cal. Super. Ct. Alameda Cnty. May 1, 2020) (J-M moving for summary judgment, in part, based on J-M's limited corporate existence, plaintiff's "highly suspect" product identification, and J-M's disbelief that secondary exposure causes mesothelioma); Ex. 4 (Order Denying J-M's motion in *Williams*); Ex. 5 (special verdict form finding against J-M in *Williams*).

or moved to dismiss for reasons other than failure to state a claim. *See, e.g.*, Ex. 6 (moving to dismiss in the *Nettle* case based on lack of personal jurisdiction); Ex. 7 (same in the *Podorski* case). And J-M does not allege that any court issued an adverse ruling against any plaintiff in those cases, which underscores that they were not objectively baseless. *Cf. Prof'l Real Est Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993) ("The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation."); *New W., L.P.*, 491 F.3d at 722 (rejecting plaintiff's argument that defendant filed sham lawsuits when none had been adjudicated in plaintiff's favor); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1234 (7th Cir. 1986) ("A defendant therefore may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff which if successful would nullify the initial judgment.").

J-M also argues that Gori Law must have brought objectively baseless cases because it purportedly dismissed over 90% of them without prejudice. Compl. ¶¶ 4, 100(d). The Complaint does not identify what cases purportedly make up this figure or why they were baseless. In any event, the Complaint alleges that Gori Law and J-M settled cases as part of global resolutions in which J-M agreed to pay on some cases and Gori Law agreed to dismiss others, while maintaining flexibility to use settlement funds to pay victims in settled and dismissed cases. *Id.* ¶ 53. Nothing about those allegations—which on their face reflect a practical solution allowing Gori Law to compensate numerous clients—supports that dismissed cases were frivolous.

Indeed, even in a vacuum, voluntary dismissals without prejudice do not imply or even reasonably support an inference that those cases were "objectively meritless." *See Burford v. Account. Prac. Sales, Inc.*, 786 F.3d 582, 589 (7th Cir. 2015) ("[Plaintiff's] voluntary dismissal of its claim right before trial says nothing definitive about its view of the merits or about its reasons

- 15 -

for filing the counterclaim in the first place."), *overruled on other grounds by LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384 (7th Cir. 2019); *U.S. Futures Exch., LLC*, 953 F.3d at 966 ("Although a successful, winning petition proves its own reasonableness, it does not follow that a petition lacks merit simply because it did not prevail."); *In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1357 (S.D. Fla. 2004) (voluntary dismissals were not a sham because the plaintiff "obtain[ed] the relief or information it sought" through the voluntary dismissals"); *Knauf Insulation, LLC v. Johns Manville Corp.*, 2019 WL 10947457, at *5 (S.D. Ind. Apr. 30, 2019) ("[T]he agreement to dismiss a claim does not evince bad faith, as there are plenty of reasons for such a dismissal.").

Finally, the sham exception's second application also does not apply. For alleged misrepresentations to give rise to an exception to *Noerr-Pennington*, a judicial ruling must have been "dependent upon the [allegedly] misrepresented information." *Mercatus Grp. LLC*, 641 F.3d at 843 (cleaned up); *Rubloff*, 863 F. Supp. 2d at 742 (same). The cases J-M identified did not allegedly involve any substantive judicial ruling adverse to J-M, let alone one based on any alleged misrepresentations.

*** 

In sum, *Noerr-Pennington* serves a critical purpose of allowing litigants to advocate without fear of a collateral suit attacking their conduct. Indeed, under J-M's expansive theory of RICO liability, J-M's attorneys could be sued for the positions they took defending against asbestos litigation, which could be characterized as "baseless" when they argued J-M was not liable for injuries but nevertheless lost or settled those cases. *See Morgan*, 60 Cal. App. 5th at 1081 (affirming judgment on appeal); *Williams*, 102 Cal. App. 5th at 250 n.1 (same); Ex. 1 (J. on Special

- 16 -

Verdict, *Metzger*, *supra* note 1 ($8.8 million jury verdict against J-M and others)).    *Noerr-Pennington* ensures that litigation conduct does not give rise to tit-for-tat reprisals.

## II.    J-M FAILS TO STATE A RICO VIOLATION (COUNTS I AND II)

Beyond the threshold *Noerr-Pennington* bar, J-M fails to plausibly allege a RICO claim. RICO "does not cover all instances of wrongdoing.  Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity."    *Jenkins v. Wigginton*, 2026 WL 507360, at *4 (S.D. Ill. Feb. 24, 2026) (citing *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)).  In keeping with this limited purpose, to state a claim under 18 U.S.C. § 1962(c), J-M must plausibly allege that each Defendant engaged in: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity."  *Menzies*, 943 F.3d at 336 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013).  J-M must also plead that the alleged harm injured its "business or property" and was caused "by reason of" the RICO violation.  *See Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).  J-M has not adequately alleged these elements.

### A.    J-M Fails to Adequately Allege a RICO Enterprise

The inclusion of the enterprise concept in the federal RICO statute reflects Congress's intent to prevent racketeers from establishing and investing in "wholly illegal enterprises" or "infiltrat[ing]" legitimate business enterprises.  *United States v. Turkette*, 452 U.S. 576, 584, 588 (1981).  This description does not come close to the allegations J-M asserts to show the existence of a RICO enterprise in this matter.

J-M alleges two enterprises: (i) a "legal entity" enterprise in which Gori Law itself was the enterprise and only Ms. Gori-Gregory and Ms. Salger were members (the "Gori Firm Enterprise")

- 17 -

(Count I); and (ii) an "association-in-fact" enterprise in which all Individual Defendants comprise the enterprise (the "Bounty System Enterprise") (Count II).  The allegations underlying both are the same: J-M attempts to premise a criminal RICO enterprise on allegations that a law firm and its lawyers represented individuals (or their estates) who are suffering or died from illnesses related to asbestos exposure.  Both enterprises suffer from a fatal distinctiveness problem—J-M does not allege an enterprise distinct from the alleged persons conducting the enterprise.  The enterprises also fail because there are no plausible allegations supporting the notion that the law firm or lawyers joined together so that they could engage in the common criminal purpose of defrauding J-M, as opposed to lawyers prosecuting cases on behalf of different clients over time.

### 1.   J-M's Enterprise Allegations Fail for Lack of Distinctiveness

The definition of an enterprise "is not limitless."  *Walgreen*, 719 F.3d at 853.  To establish an enterprise, J-M "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  This is because "[t]he enterprise itself is not liable for RICO violations; rather, the 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable."  *J-M Mfg. Co., Inc.*, 2025 WL 843854, at *6 (quoting *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013)).  "Without a difference between the defendant and the 'enterprise' there can be no violation of RICO." *Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004).

Those principles doom J-M's enterprise allegations.  The Gori Firm Enterprise fails because J-M alleged that Gori Law is both a RICO person and the RICO enterprise.  Compl. ¶ 109 ("The Gori Law Firm is an ongoing legal entity enterprise, as the term is defined in 18 U.S.C. § 1961(4)."); *id.* ¶ 130 ("The Gori Firm" is a RICO "'person,' as the term is defined in 18 U.S.C.

§ 1961(3)"). But "by virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise." *J-M Mfg. Co., Inc.*, 2025 WL 843854, at \*7 (quoting *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2d Cir. 1994)). Courts routinely dismiss enterprise allegations in these circumstances. *See, e.g.*, *J-M Mfg. Co., Inc.*, 2025 WL 843854, at \*7 (dismissing "legal entity" enterprise because J-M "named both Simmons Hanly and the other individual defendants who worked for Simmons Hanly as the RICO 'persons'"); *Ratfield v. U.S. Drug Testing Laboratories, Inc.*, 2024 WL 640955, at \*2 (N.D. Ill. Feb. 15, 2024) (noting that "every circuit that has squarely decided the issue" has rejected a RICO claim where the "corporation is a person and the corporation together with its employees are the enterprise"); *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997) (similar).

J-M did not add Gori Law to the RICO count for the Gori Firm Enterprise, but this does not change the analysis. *See* Compl. ¶¶ 107-17. "[T]he plain language and purpose of the [RICO] statute contemplate that a *person* violates the statute by conducting an *enterprise* through a pattern of criminality" and "[i]t thus follows that a corporate person cannot violate the statute by corrupting itself." *J-M Mfg. Co., Inc.*, 2025 WL 843854, at \*6 (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)). But that is exactly what J-M alleges throughout the Complaint. J-M repeatedly alleges that Gori Law took actions in furtherance of the fraudulent scheme as a RICO person because "the Gori Firm" "implemented [the] 'bounty' system" (Compl. ¶ 36); "maintained product identification booklets" (*id.* ¶ 40); "deliberately filed . . . cases it knew were objectively baseless" (*id.* ¶ 54); and "entered into no-poach agreements" (*id.* ¶ 56); *see also id.* ¶¶ 42, 43, 46, 47. J-M even alleges that Gori Law used and conspired to use racketeering proceeds "***in the operation of the Gori Firm Enterprise***," which underscores that J-M has made no distinction between Gori Law as a RICO person or enterprise. *Id.* ¶ 133 (emphasis added).

- 19 -

The Bounty System Enterprise fails for similar reasons.  It is well settled that a business entity carrying out its own activities (even fraudulent ones) only through its agents and employees does not constitute an associated-in-fact enterprise.  *Ratfield*, 2024 WL 640955, at *2; *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *12 (S.D.N.Y. July 15, 2016) (collecting cases).  The Complaint claims that the Bounty System Enterprise is "distinct" from Gori Law, but there are no plausible allegations supporting that.  As explained above, the Complaint repeatedly alleges that Gori Law took actions in furtherance of the fraudulent scheme as a RICO person, including doing the exact things J-M claims made the Bounty System Enterprise distinct.  *Compare* Compl. ¶¶ 36, 40, 54, 56 (alleging Gori Law was responsible for implementing the bounty system, product identification booklets, filing baseless cases, and entering into no-poach agreements) *with id.* ¶ 85 (alleging that bounty system made the Bounty System Enterprise distinct from Gori Law).

Courts also routinely dismiss RICO claims in these circumstances.  *See Fitzgerald*, 116 F.3d at 226 (affirming dismissal of three association-in-fact enterprises because "an employer and its employees cannot constitute a RICO enterprise"); *Crichton v. Golden Rule Ins. Co.*, 2007 WL 9724909, at *5 (S.D. Ill. Aug. 29, 2007), *aff'd*, 576 F.3d 392 (7th Cir. 2009) (dismissing enterprise consisting of insurance company and a consumer organization that sold insurance for lack of distinctiveness because "there [was] nothing extraordinary about [their] relationship" and "[b]are legal and factual distinctness is insufficient"); *El-Issa v. Compaq Computer Corp.*, 1997 WL 790730, at *4 (N.D. Ill. Dec. 19, 1997) (similar).

### 2. J-M Has Not Plausibly Alleged an Enterprise with a Common Purpose or Organizational Structure

Even if J-M could overcome its distinctiveness problem, its enterprise allegations still fail. "A RICO enterprise must have 'an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making.'"

*Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (quoting *Jennings*, 910 F.2d at 1440); *see also Baker*, 357 F.3d at 691 (noting that the existence of a "common purpose" is "an essential ingredient" of an association-in-fact enterprise) (citing *Turkette*, 452 U.S. at 583). J-M fails to plausibly allege those elements in this common scenario of lawyers representing clients in asbestos litigation.

As a threshold matter, courts across the country have overwhelmingly rejected attempts "to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992); *see also Gomez v. Guthy-Renker LLC*, 2015 WL 4270042, at *8-10 (C.D. Cal. July 13, 2015) (collecting cases from the Second, Fifth, Sixth, Seventh, and Ninth Circuits rejecting attempts to characterize commercial entities as RICO enterprises). This is because RICO liability requires more than alleging a pattern of racketeering activity. *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998). If actions—even fraudulent—taken in furtherance of routine business activity are enough to allege an enterprise, then a plaintiff alleging a pattern of predicate racketeering acts involving a commercial entity would automatically state a RICO claim. This in turn would transform any run-of-the-mill claim involving a business entity into a presumptive RICO claim, but "RICO has not federalized every state common-law cause of action available to remedy business deals gone sour." *Midwest Grinding Co., Inc.*, 976 F.2d at 1025. Against this backdrop, J-M's enterprise allegations fail.

***J-M's common purpose allegations are deficient.*** As to both enterprises, J-M alleges that the common purpose was "to further the scheme to defraud." Compl. ¶ 97; *see also id.* ¶ 81 (Gori Firm Enterprise's "primary objective" was enrichment through "mass filing of objectively baseless cases"); *id.* ¶ 85(a) (Bounty System Enterprise's "purpose" was to "maximize recoveries" through

- 21 -

fraudulent cases). J-M's theory would require specific factual allegations showing that either enterprise was created or came together for the purpose of filing objectively baseless cases, rather than to pursue meritorious litigation. But J-M has not asserted factual allegations supporting the claim that either enterprise had the fraudulent purpose alleged in the Complaint. Instead, the Complaint supports that Defendants came together to represent individuals suffering from life threatening illnesses in litigation against asbestos manufacturers. *Cardenas v. RIA Telecomms., Inc.*, 2001 WL 536043, at *3 (N.D. Ill. May 18, 2001) (holding an "enterprise must be 'more than an association of individuals or entities conducting the normal affairs of a defendant corporation'" (quoting *Brittingham v. Mobil Corp.*, 943 F.2d 297, 301 (3d Cir. 1991))); *Luna v. 4C Kinzie Inv. LLC,* 2019 WL 1239770, at *3 (N.D. Ill. Mar. 18, 2019).

J-M cannot establish an enterprise with a common purpose by alleging solely that Defendants engaged in a pattern of racketeering activity—the filing and pursuit of allegedly fraudulent cases for financial benefit. Compl. ¶¶ 85, 97, 122, 146; *see Stachon*, 229 F.3d at 675 (plaintiff must allege more than a purported scheme to defraud consumers, "otherwise, 'every conspiracy to commit fraud that requires more than one person to commit is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation.'" (citation omitted)); *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 808 (N.D. Ill. 2014) ("A purpose aside from the predicate acts themselves is an essential element of a RICO enterprise." (citing *Stachon*, 229 F.3d at 675)). Nor can it do so by alleging that facially legitimate features of a law firm, such as hiring attorneys, training attorneys, setting firm policy, or negotiating referral arrangements, are evidence of an enterprise. Compl. ¶¶ 80, 85; *see Crichton*, 576 F.3d at 400.

J-M's defective pleading is in line with RICO cases that were dismissed on common purpose grounds. For example, in *Green v. Morningstar, Inc.*, the complaint alleged that several

- 22 -

investment advisors were an associated-in-fact enterprise with the common purpose to defraud investors. 2018 WL 1378176, at *5 (N.D. Ill. Mar. 16, 2018). The court dismissed the complaint because the complaint "improperly relie[d] solely on the alleged predicate acts to supply the common purpose." *Id.* at *6.

Similarly, in *Ford*, the court dismissed a complaint alleging that several law firms, lawyers, and a paralegal formed an associated-in-fact enterprise with the common purpose of submitting inflated fee petitions in consumer litigation. The court explained that Ford alleged that defendants' "billing—the primary activity at any for-profit law firm hoping to stay in business—was conducted fraudulently," but those types of allegations are "incompatible with the types of conduct RICO was enacted to prevent.'" *Ford Motor Co.*, 2025 WL 3306280, at *7-8, *13-16. Ford then amended its complaint to name a single law firm as a legal entity enterprise, but the court rejected those allegations for the same reasons. *See Ford Motor Co. v. Mikhov*, 2026 WL 691879, at *15 (C.D. Cal. Mar. 10, 2026) ("Plaintiff's allegations are again limited to the idea that Defendants' billing . . . was conducted fraudulently.").[5]

Numerous other cases have dismissed RICO claims involving similar allegations. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., and Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202-03 (C.D. Cal. 2011) (association-in-fact enterprise failed because the complaint alleged "no more than that Defendants' primary business activity—the design, manufacture, and sale or lease of Toyota vehicles—was conducted fraudulently"); *Bai v. CMB Exp. Infrastructure Inv. Grp. 48, LP*, 2025 WL 959099, at *7 (E.D. Cal. Mar. 31, 2025)

---

[5]    Some courts have not analyzed the common purpose element when assessing a legal entity enterprise. *See, e.g.*, *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 908 (N.D. Ind. 2013). But those cases are nothing like this one given that J-M identifies Gori Law as a RICO person and premises its Complaint on conclusory allegations of ordinary business conduct. Regardless, as noted above, several other courts, including *Ford*, have evaluated the common purpose element in the context of a legal entity enterprise.

(association-in-fact enterprise failed because it was "predicated on the routine . . . attorney-client relationship—as well as the allegation that Defendant['s] . . . primary business activities—legal representation and litigation—was conducted fraudulently"); *Broyles v. Wilson*, 812 F. Supp. 651, 657 (M.D. La. 1993) (legal entity enterprise failed where the purported enterprise, a law firm, was performing acts "in the course of [its] regular business" and allegations failed to plausibly allege that it "existed for the purpose of effectuating" the fraudulent scheme).

The foregoing cases are squarely on point and compel dismissal. As in those cases, J-M attempts to transform the routine representation of clients into a RICO enterprise by asserting in conclusory fashion that the enterprise had a common purpose to engage in fraud. J-M cannot make any factual allegations because there is no basis to allege that Defendants were doing anything other than engaging in the practice of law on behalf of clients suffering from life threatening illnesses due to asbestos exposure.

***J-M Fails to Adequately Allege an Organizational Structure.*** The Bounty System Enterprise fails for an additional reason. J-M fails to plausibly allege an enterprise with "an ongoing organization, [either] formal or informal." *Turkette*, 452 U.S. at 583. This requires allegations that the members of the enterprise created a vehicle for the commission of two or more predicate crimes that is separate from themselves and the underlying racketeering acts. *Boyle v. United States*, 556 U.S. 938, 946 (2009); *Turkette*, 452 U.S. at 583. As with common purpose, this element is not met by alleging only that lawyers worked together in a fraudulent manner.

But that is what J-M alleged here. When the Complaint is stripped of its hyperbole, all that is alleged is a law firm and lawyers working cases that J-M believes it has factual defenses against. This is hardly evidence of an ongoing organization that is separate and apart from Gori Law or the alleged racketeering acts. *See Stachon*, 229 F.3d at 676 ("RICO plaintiffs cannot establish

- 24 -

structure by defining the enterprise through what it supposedly does."); *Jennings*, 910 F.2d at 1440 ("[A]lthough a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does.").

J-M claims that the Bounty System Enterprise had a structure consisting of the bounty system, attorney training sessions, and relationships between the Individual Defendants. Compl. ¶ 85. When the hyperbole is set aside, J-M's factual allegations support, at best, that Gori Law had a policy to compensate lawyers for successful cases, trained lawyers, and had a management structure. *See infra* Section II.B.1. These are entirely unremarkable features of a law firm. J-M needed to do much more if it wanted to show that facially legitimate business activity is evidence of a RICO enterprise. It is easy to lob allegations, which is precisely why more is required to establish a RICO enterprise. *Jackson v. Evans*, 2024 WL 4252798, at *6 (N.D. Ill. Sept. 20, 2024) ("[L]umping Defendants together with conclusory allegations remains insufficient to establish an enterprise under RICO."); *Stachon*, 229 F.3d at 676 (concluding no enterprise existed due to "[a]ppellants' vague allegations of a RICO enterprise made up of a string of participants, known and unknown, lacking any distinct existence and structure"); *Rocha*, 15 F. Supp. 3d at 807 (dismissing RICO enterprise where the alleged facts did not "plausibly suggest that Defendants seized control of the [enterprise] and used it to perpetrate large-scale criminal activity"); *Jenkins*, 2026 WL 507360, at *4 (similar).

J-M's bare-bones allegations are not remotely satisfactory. There are no allegations of an agreement among the Individual Defendants to create and maintain an ongoing enterprise. There are no allegations of coordination and continuity. There are no allegations that Defendants did anything that could be characterized as forming a vehicle for the commission of RICO predicate

acts of fraud, as courts require.  The Complaint does not even allege communications among Defendants concerning the purported enterprise.

* * *

Because J-M has not plausibly alleged that Defendants created and maintained an ongoing organization and continuing unit to accomplish a joint common purpose, as opposed to simply working together to litigate cases, the Complaint must be dismissed for failure to allege an enterprise.  Allowing J-M's enterprise allegations to proceed would be an unprecedented expansion of civil RICO liability into the conduct of law firms and lawyers.  Courts routinely dismiss RICO complaints against law firms in similar circumstances.  *See, e.g.*, *J-M Mfg. Co.*, 2025 WL 843854, at *8 (dismissing RICO claim premised on law firms filing sham asbestos-related lawsuits because plaintiff did not plausibly allege, among other things, that the co-counsel law firms "joined together as a group to perpetrate the frauds against the plaintiff"); *Ford Motor Co.*, 2026 WL 691879, at *14 (similar); *Broyles*, 812 F. Supp. at 657 (similar); *W. Town Bank & Tr. v. Forman*, 2020 WL 6585655, at *6 (D.S.C. Nov. 10, 2020) (similar); *Ravet v. Solomon, Ward, Seidenwurm & Smith, LLP*, 2007 WL 2088381, at *4 (S.D. Cal. July 17, 2007) (similar); *Beydoun v. Rosenthal*, 2024 WL 4907214, at *4 (E.D. Mich. Sept. 30, 2024) (similar).

### B.    J-M Has Not Plausibly Alleged a Pattern of Racketeering Activity

Dismissal is separately warranted because J-M fails to allege a pattern of racketeering activity—predicate acts of mail and wire fraud—with particularity under Rule 9(b), which applies to its RICO claims.  *See* Fed. R. Civ. P. 9(b); *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001).  The elements of mail and wire fraud are: "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails [or wires] in furtherance of the fraudulent scheme."  *Williams v. Aztar Ind. Gaming*

- 26 -

*Corp.*, 351 F.3d 294, 299 (7th Cir. 2003).  Rule 9(b) requires a plaintiff to particularize the "who, what, when, where, and how" of the alleged fraud, *Uni\*Quality, Inc v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992), what is false or misleading about the statement and why it is material, *Neder v. United States*, 527 U.S. 1, 22 (1999); *United States v. Clark*, 140 F.4th 395, 418 (7th Cir. 2025), and how the mails or wires were "incident to an essential part of the scheme," *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1330-31 (7th Cir. 1994).

J-M alleges two categories of predicate acts: (i) purported instructions provided to depo attorneys to elicit false testimony that allegedly led to the batch settlement of cases, and (ii) court filings and discovery responses in 12 "sample cases" that were allegedly "objectively baseless." Compl. ¶¶ 60-70.  The Complaint primarily opts for bluster and handwringing concerning these alleged racketeering acts, which is inadequate.  *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1040 (N.D. Ill. 2007) ("When an averment of fraud fails to satisfy Rule 9(b), it must be stricken from the complaint." (citing *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001))).  When the hyperbole is set aside, and the factual allegations are analyzed under the requirements of Rule 9(b), the Complaint comes up short.

### 1. Allegations Concerning the Purported Bounty System, Fraud Playbook, and Batch Settlements Fail Rule 9(b)

J-M's allegations about the purported "bounty system," "fraud playbook," and "batch settlements" are fatally defective.  The gist of those allegations is that depo attorneys "coached" clients and potential clients to make false product identifications, which Gori Law used to extract settlements.  Compl. ¶¶ 36-55.  These allegations fail Rule 9(b) for several reasons.

*First*, J-M's allegations about the bounty system are deficient because they fail to identify the time, place, and specific content of any purported false representations as well as the identities of the parties to any misrepresentation.  *See, e.g.*, *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20

F.3d 771, 778 (7th Cir. 1994). For example, J-M never identifies the depo attorneys who were purportedly instructed to coach witnesses, what was said to them, when those alleged coaching sessions occurred, or how those instructions were communicated. J-M also never identifies any particular plaintiff who allegedly received these instructions from depo attorneys, when that occurred, a single deposition in which a plaintiff testified falsely as a result, or any case that was litigated or settled based on those purportedly false misrepresentations. The Complaint also alleges that the bounty system was "implemented" by or through the Individual Defendants but fails to particularize those allegations by, for example, specifying what those Individual Defendants did or said to the depo attorneys. Compl. ¶ 39; *see also id.* ¶ 92(i). "Conclusory allegations do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal." *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990).

*Second*, J-M's allegations about the "fraud playbook" fail for similar reasons. J-M never identifies the depo attorneys who were purportedly "trained" to conduct meetings with prospective plaintiffs, when or how those instructions were provided, and who provided them. J-M also never identifies any particular plaintiff who allegedly met with depo attorneys, when that occurred, or any case that was litigated or settled following those meetings. J-M also does not allege that any Individual Defendant had anything to do with the purported fraud playbook.

*Third*, J-M does not identify a single case that was settled or dismissed as part of the batch settlement allegations, let alone connect any purported false statement or misrepresentation to those cases, which was generated from the alleged bounty system or fraud playbook. Instead, J-M alleges without factual support that "dozens of batch settlements" were reached between 2018 to 2025 but fails to identify a single settlement even though it was a party to them. Compl. ¶ 95(a).

- 28 -

*Finally*, J-M does not particularize any mailing or wire in furtherance of the bounty system or fraud playbook.  J-M alleges in conclusory fashion that various mail and wire communications were used—such as emailing referral sources, telephone calls and emails to schedule meetings with clients, mailing trust affidavits, electronic submission of bankruptcy claims, electronic filing of court documents, telephonic and videoconference depositions and deposition training sessions, and electronic transmission of settlement payments (*id.* ¶¶ 89, 96)—but it does not "specify the dates or contents of the wrongful communications and state how these communications relate to the alleged fraud."  *Robinson v. City Colls. of Chi.*, 656 F. Supp. 555, 558-59 (N.D. Ill. 1987) (granting motion to dismiss under Rule 9(b) for failure to identify a specific mailing or wire in furtherance of the scheme).  J-M also makes many of these allegations on information and belief, which does not satisfy Rule 9(b).  *Uni*Quality, Inc.*, 974 F.2d at 924; *e.g.*, Compl. ¶¶ 90(a), (b), 95(a).

### 2.    Allegations Concerning the Sample Cases Fail Rule 9(b)

J-M purports to identify 12 "sample cases" representative of the fraudulent scheme.  Compl. ¶¶ 60-70.  To establish a pattern of racketeering activity in satisfaction of Rule 9(b), the alleged predicate acts must be "representative samples of the scheme" pled with specificity and constituting viable claims.  *United States ex rel. USN4U, LLC v. Wolf Creek Fed. Servs., Inc.*, 34 F.4th 507, 514 (6th Cir. 2022) (cleaned up).  The allegations concerning the sample cases fail that test for two reasons.

*First*, J-M fails to allege a materially false statement or misrepresentation in any of the sample cases or that the statements were made in furtherance of the fraudulent scheme.  *See, e.g.*, *Aztar Ind. Gaming*, 351 F.3d at 299; *Jepson*, 34 F.3d at 1330-31.  J-M alleges that "there was no allegation or evidence" in those cases—either in the complaints or through discovery responses—

that the decedent was ever exposed to J-M's asbestos products and their occupations involved no potential exposure. Compl. ¶¶ 61, 66, 92-94. The absence of an allegation in a complaint is not a false statement. J-M also does not allege that Gori Law's discovery responses contained false statements. In fact, J-M credits the accuracy of that information and relies on it to claim there was no viable case against J-M. *Id.* ¶¶ 92-93; *Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 774 (N.D. Ill. 2019) (dismissing RICO claim where plaintiffs' allegations of mail and wire fraud "[did] not specify what about [them] constitute[d] a misrepresentation"); *G&G Closed Cir. Events, LLC v. Castillo*, 327 F. Supp. 3d 1119, 1135-36 (N.D. Ill. 2018) (similar).

All that remains are allegations from complaints that J-M was responsible for asbestos exposure, which J-M claims were false because the decedents' work histories did not expose them to J-M's products. In other words, J-M believes that the complaints included truthful factual allegations (*i.e.*, that the decedent's work history ended before J-M supplied products) that simply failed to state a claim on their face. Accepting this theory, whenever a litigant files a complaint that fails to state a claim, the litigant has committed a racketeering act. Courts have repeatedly rejected attempts to construe RICO in this manner. *See infra* Section II.B.3.

Regardless, J-M's complaint reinforces that those statements did not advance the fraudulent scheme given that J-M repeatedly describes its contemporaneous disbelief of them. *See, e.g.*, Compl. ¶¶ 61-62, 66-68, 70(a)-(j), 100(a)-(d). In fact, J-M alleges that the plaintiff's or decedent's work history made it "legally impossible" for J-M to be liable for the asbestos exposure. *Id.* ¶ 58(a). Accepting that as true, J-M has not plausibly alleged that these statements were made in furtherance of a fraudulent scheme. *See Calavan v. First Love Int'l Ministries*, 590 F. Supp. 3d 1131, 1140 (N.D. Ill. 2022) (holding allegations of predicate acts of mail and wire fraud failed because the alleged fraudulent conduct was not intended to deceive the RICO plaintiff); *Meier v.*

- 30 -

*Musberger*, 588 F. Supp. 2d 883, 905-06 (N.D. Ill. 2008) (holding a mailing does not further the scheme to defraud "'when it serves to put the defrauded person on notice of the fraud, makes the execution of the fraud less likely, opposes the scheme, or discloses the nature of the fraud'" (quoting *United States v. Koen*, 982 F.2d 1101, 1107 (7th Cir. 1992)).

*Second*, the allegations about the sample cases are defective because J-M does not tie any purported misrepresentations with any cognizable injuries. J-M does not allege that any of the sample cases were settled or dismissed without prejudice as part of batch settlements with Gori Law. J-M claims that it incurred attorneys' fees, but legal fees are not a RICO injury. *Evans*, 434 F.3d at 924-25 (attorneys' fees incurred to defend against a case that was later withdrawn are not an injury to "business or property" under RICO). And even if legal fees were recoverable, J-M failed to identify any specific fees it incurred in connection with the sample cases, such as what the fees were for, which attorney incurred them, when the fees were incurred, or how a specific misrepresentation caused J-M to incur those fees. By failing to link the alleged misrepresentations in the sample cases to a settlement or court award, the Complaint does not plausibly allege that J-M suffered an injury from the alleged misrepresentations. *See, e.g.*, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (RICO proximate cause requirement "ask[s] . . . whether the alleged violation led directly to the plaintiff's injuries").

\* \* \*

As the foregoing sections reflect, J-M has failed to meet all of Rule 9(b)'s requirements. There is no excuse for J-M's lack of particularity. J-M knows what cases it settled, what cases were dismissed without prejudice, and when mailings or wires occurred in connection with those settlements. J-M also cannot claim that some of this information is exclusively within Defendants' control because J-M purports to rely on a whistleblower. Compl. ¶¶ 35, 37, 38, 41; *see*

- 31 -

*Uni\*Quality, Inc.*, 974 F.2d at 924; *Masterson v. Cheetah Mobile Inc.*, 2018 WL 5099505, at \*3 (C.D. Cal. 2018) ("Plaintiff should be able to offer more than 'mere conclusory allegations of fraud'" where its claim is based on information from those with personal knowledge of the fraud).

J-M's pleading failures also underscore why complying with Rule 9(b) is so important. Rule 9(b)'s heightened pleading standard serves three purposes: (i) "protecting a defendant's reputation from harm"; (ii) preventing "fishing expeditions"; and (iii) "providing notice of the claim to the adverse party." *Jepson*, 34 F.3d at 1327 (cleaned up). All are implicated here. The Complaint provides Defendants no notice of what settlements or cases dismissed without prejudice are at issue, what false representations were purportedly made during depositions or the intake process, who made them, or when. Defendants cannot prepare their defense in these circumstances, and they are left being dragged through the mud based on conjecture and hyperbole. *Uni\*Quality, Inc.*, 974 F.2d at 924 (Rule 9(b) serves an "important purpose" given the "serious[] harm" to a business from accusations of racketeering activity). J-M also repeatedly states that it would need to conduct a broad, unspecified fishing expedition into cases nearly a decade old to obtain the specifics it needs to support its accusations. Compl. ¶¶ 28, 41 n.6, 89, 91, 95(b). J-M has the process backwards. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) ("[T]he particularity requirement of Rule 9(b) is designed to discourage a sue first, ask questions later philosophy." (citation omitted)); *Ass'n of Am. Physicians & Surgeons v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021) (same).

Equally problematic, on their face, the overwhelming majority of J-M's allegations are consistent with the routine practice of law. The allegations amount to attorneys being trained to elicit information from clients and assist clients in identifying exposure to asbestos products that may have occurred years ago. There is nothing fraudulent about that or compensating attorneys

who successfully litigate cases.  J-M tries to transform those allegations into something nefarious by sprinkling in adjectives like "fraud" and claiming these practices "incentivized" false testimony, but J-M never particularizes the basis for those allegations.

J-M cannot state a RICO claim "pleading by adjective." *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009).  And when predicate acts are premised on facially legitimate business conduct, "a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Props. v. Marcus & Millichap Co.*, 751 F.3d 990, 997-98 (9th Cir. 2014).  J-M did not meet those requirements.  Courts routinely dismiss RICO complaints in these circumstances.  *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (holding RICO complaint failed to allege mail and wire fraud with particularity where the "complaint states neither who made the misrepresentation nor on what date it was made"); *Midwest Grinding Co., Inc.*, 976 F.2d at 1020 (holding RICO complaint failed to allege mail and wire fraud with particularity where the complaint did not "identify the time and place of the alleged predicate acts"); *Jackson v. Jersey Community Hosp.*, 631 F. Supp. 3d 616, 624 (S.D. Ill. 2022) (dismissing under Rule 9(b) because the "[c]omplaint is devoid of vital information, such as the time, place, and content of the purported fraudulent reports or misrepresentations").

### 3.    J-M Cannot Premise Racketeering Activity on Use of the Mail and Wires in Connection with Litigation

J-M's allegations fail for an independent reason.  At its core, J-M alleges that Defendants filed meritless cases against J-M and prosecuted those cases using the mail and wires.  This alleged misconduct is not racketeering activity.

Courts nationwide have held that ordinary litigation activities, even if baseless or fraudulent, are not racketeering acts.  *See, e.g.*, *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)

(collecting cases from the First, Second, Fifth, Tenth, and Eleventh Circuits); *Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 848 (N.D. Ill. 2013).  This includes conduct such as, among other things, the alleged "filing and prosecuting a complaint" with false documents, *Drobny*, 929 F. Supp. 2d at 848 (citation omitted); filing malicious lawsuits to extort money, *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087-88 (11th Cir. 2004); "proffering false affidavits and testimony" to a court, *Gabovitch v. Shear*, 70 F.3d 1252 (table), 1995 WL 697319, at *2 (1st Cir. 1995); and making "false statements to [a] [c]ourt with the intent to coerce [a] plaintiff into settling," *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 69 (E.D.N.Y. 2020).

There are compelling reasons supporting this rule.  As a threshold matter, a lawyer's act in exchanging a document with a represented adversary that states a client's legal position "simply is not fraudulent." *Paul S. Mullin & Assocs., Inc. v. Bassett*, 632 F. Supp. 532, 540 (D. Del. 1986); *Spiegel v. Cont'l Illinois Nat'l. Bank*, 609 F. Supp. 1083, 1089 (N.D. Ill. 1985) (correspondence between attorneys, dealing at arm's length on behalf of clients, concerning issue in pending litigation was not mail fraud under RICO).  A contrary conclusion would be "absurd" and mean that "every dispute in which the parties' counsel exchanged letters could give rise to RICO litigation." *Bassett*, 632 F. Supp. at 540.  It also "would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts" because "any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability." *Kim*, 884 F.3d at 104; *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("[P]rosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system."); *see Azima v. Dechert LLP*, 2024 WL 4665106, *19 (S.D.N.Y. Sept. 26, 2024) (explaining policy reasons supporting *Kim* rule).

- 34 -

These principles apply with force to J-M's allegations. J-M's predicate acts are all grounded in litigation activities, which courts routinely conclude are not predicate acts. J-M also cannot seriously assert they were misled by any purported misrepresentations because J-M alleges that the complaints in question were facially deficient. Allowing claims like this to proceed would come at the serious cost of chilling those harmed by asbestos products and law firms from bringing legitimate claims against J-M. In fact, this appears to be J-M's goal given that it asserted nearly identical claims, on a virtually indistinguishable RICO theory, against another law firm and lawyers in the Northern District of Illinois. *J-M Mfg. Co.*, 2025 WL 843854. RICO was never meant to be used for this purpose. *Domanus v. Locke Lord*, 847 F.3d 469, 483 (7th Cir. 2017) (the "path to relief" against lawyers who allegedly assert "frivolous litigation" "is not through RICO").

### C. J-M Fails to Plausibly Allege RICO Conduct or a Pattern of Racketeering Activity as to Each Individual Defendant

The foregoing sections identify fundamental defects in the Complaint, any one of which independently requires dismissal as to all Defendants. Those pleading failures become even more glaring when assessing J-M's allegations on an individual-by-individual basis.

To state a claim against each Individual Defendant, J-M must allege particularized facts showing that *each* Individual Defendant: (i) participated in the operation or management of the purported enterprise (so-called RICO conduct) (ii) through a pattern of racketeering activity. *Slaney*, 244 F.3d at 597. These are separate elements requiring separate proof as to each Defendant. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). RICO conduct requires factual allegations showing, for example, that a defendant gave or took directions for the enterprise, occupied a position in the chain of command, or knowingly implemented decisions of upper management. *See, e.g.*, *United States v. Swan*, 250 F.3d 495, 498-99 (7th Cir. 2001), *amending and superseding*, 224 F.3d 632 (7th Cir. 2000); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727-

- 35 -

28 (7th Cir. 1998); *Slaney*, 244 F.3d at 598; *Crichton v. Golden Rule Ins. Co.*, 2006 WL 2349961, at *7 (S.D. Ill. Aug. 11, 2006).  J-M also must allege with particularity under Rule 9(b) that each Individual Defendant participated in at least two racketeering acts.  *See supra* Section II.B.

The Complaint does not come close to meeting those elements.  J-M often fails to specify which Individual Defendant engaged in what behavior, repeatedly referring to the "Gori attorneys" when making allegations about their purported conduct.  These allegations fail to state a claim against any Individual Defendant as a matter of law.  *See Goren*, 156 F.3d at 730 ("treat[ing] all the defendants as one" by "lumping together" defendants is "clearly insufficient to state a RICO claim").  J-M also frequently makes conclusory allegations without factual support that the Individual Defendants "supervised," "implemented," or "directed" aspects of the purported enterprise.  *See, e.g.*, Compl. ¶¶ 79, 80, 90, 92-96, 110, 145.  These allegations also fail basic pleading standards and lack the requisite specificity to survive a motion to dismiss.  *Jennings*, 910 F.2d at 1438 ("[I]n pleading [RICO] predicate acts conclusory allegations that various statutory provisions have been breached are of no consequence if unsupported by proper factual allegations." (collecting cases)); *Buck Creek Coal, Inc. v. United Workers of Am.*, 917 F. Supp. 601, 613 (S.D. Ind. 1995) ("Vague and conclusory allegations that the Persons conducted or participated in the conduct of the enterprise through actions taken by unnamed persons at unspecified times and places are not sufficient to state a claim.").

When J-M's Complaint is stripped of impermissible group pleading, hyperbole, and conclusory statements unsupported by facts, very few factual allegations remain specific to the Individual Defendants.  J-M's few Defendant-specific allegations do not state a claim.

### 1.    Ms. Gori-Gregory

J-M's allegations against Ms. Gori-Gregory, the Principal Partner and Owner of the Gori Firm, are very limited and insufficient.  J-M alleges that Ms. Gori-Gregory had authority over firm policies, implemented the bounty system, made "strategic decisions that enabled the fraudulent scheme," and engaged in routine law firm activities like hiring lawyers.  Compl. ¶¶ 23, 39, 80, 90. Based on this conduct, J-M asserts that Ms. Gori-Gregory was a member of both the Gori Firm and Bounty System Enterprises.  J-M's allegations, which are conclusory, vague, and unsupported by well-pled facts, fail every stage of the RICO analysis.

*First*, J-M does not plausibly allege that Ms. Gori-Gregory participated in the operation or management of either purported enterprise.  *Reves*, 507 U.S. at 179, 185.  There are no allegations that Ms. Gori-Gregory directed anyone to do anything in furtherance of the scheme or that she ever communicated with anyone about it.  Instead, J-M relies principally on the conclusory assertion that Ms. Gori-Gregory "operated, managed, and directed" enterprise affairs "through a pattern of racketeering activity."  Compl. ¶ 79 (Gori Firm Enterprise); *see also id.* ¶¶ 84-86 (Bounty System Enterprise).   But J-M cannot establish RICO conduct relying solely on vague allegations of purported participation in the predicate racketeering acts.  "Mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise" itself.  *Goren*, 156 F.3d at 727 & n.4 (collecting cases from the Second, Third, Sixth, Seventh, Eighth, and Ninth Circuits); *see also Swan*, 250 F.3d at 499.

J-M has offered no such allegations.  J-M makes the conclusory assertion that Ms. Gori-Gregory "approved and authorized the implementation of the bounty system" and made "strategic decisions" concerning the enterprise (Compl. ¶ 90(a); *see id.* ¶¶ 23, 39) but offers no facts to support those assertions.  J-M also alleges that Ms. Gori-Gregory hires, fires, and trains depo

- 37 -

attorneys, directs firm spending, negotiates and liaises with referral firms, makes decisions about which cases to file, and determines settlement or dismissal strategies. *Id.* ¶¶ 80, 90. But, again, J-M does not offer the slightest factual support for these statements or explain how these actions were purportedly in furtherance of the enterprise. A complaint will not survive a motion to dismiss if it "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up); *see also Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[W]hen considering the viability of a claim in the face of a Rule 12(b)(6) challenge, we may reject sheer speculation, bald assertions, and unsupported conclusory statements.").

J-M's allegations against Ms. Gori-Gregory amount to a law firm partner engaged in conduct typical of a lawyer, such as training and hiring attorneys and setting firm policy. Those types of allegations fail to state a RICO claim as a matter of law. *Reynolds v. Condon*, 908 F. Supp. 1494, 1530 (N.D. Iowa 1995) (dismissing RICO claim against lawyer because "the mere allegation that someone is a partner in a law firm does not mean that everything that partner does is conducting the affairs of the law firm"); *Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir. 1993) (similar). J-M also cannot manufacture RICO conduct by characterizing facially legitimate legal activities as "fraudulent." Compl. ¶¶ 41-52, 80, 90; *Midwest Grinding Co., Inc.*, 976 F.2d at 1025.

*Second*, J-M fails to plausibly allege that Ms. Gori-Gregory participated in a pattern of racketeering activity. *See United Food*, 719 F.3d at 853. J-M alleges that Ms. Gori-Gregory's predicate acts included implementing the bounty system that incentivized depo attorneys to elicit false testimony, causing wire payments for referral fees, and participating in communications about filing unidentified lawsuits against J-M. Compl. ¶ 90. These allegations fail for all the reasons discussed above. *See supra* Section II.B. J-M never particularizes what Ms. Gori-Gregory allegedly said to depo attorneys and when, which depo attorneys were purportedly incentivized to

elicit false testimony, any cases where witnesses provided false testimony, any cases where depo attorneys manufactured false exposure identification, or any cases where a false identification was actually made. Nor does J-M allege any specific reports, referral payments, or bonus payments that contained or were based on fraudulent information. J-M also fails to specify any "objectively baseless lawsuit[]" that Ms. Gori-Gregory "participated in," let alone any false information in those lawsuits. *Menzies*, 943 F.3d at 338-41.

These allegations fail for another independent reason: J-M offers no facts supporting that Ms. Gori-Gregory knowingly participated in racketeering acts with fraudulent intent. *McDonald v. Schencker*, 18 F.3d 491, 495 (7th Cir. 1994) ("Most importantly, complaints charging fraud must sufficiently allege the defendant's fraudulent intent." (citation omitted)); *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1005 (7th Cir. 2004) ("Intent to defraud requires a wilful act by the defendant with the specific intent to deceive or cheat . . . ." (citation omitted)). In fact, J-M does not even allege in conclusory fashion that Ms. Gori-Gregory acted with an intent to defraud. Instead, it asserts that she "participated in" and knew about the "fraudulent scheme." Compl. ¶ 90. Much more is required to plausibly state a claim. *United States v. Lundberg*, 990 F.3d 1087, 1095 (7th Cir. 2021) ("[T]he intent to defraud requires more than knowledge of shadowy dealings, superficial participation, or the exchange of money." (cleaned up)).

### 2.      Ms. Salger

Ms. Salger is the Managing Partner of Gori Law. Compl. ¶ 78. J-M's limited allegations against her reflect that she engaged in the conduct of a lawyer at a law firm, including filing complaints, working on discovery responses, and training attorneys. *Id.* ¶¶ 24, 60, 63, 65, 68, 78, 80, 92. Based on this conduct, J-M asserts that Ms. Salger was a member of both the Gori Firm and Bounty System Enterprises. These allegations fail every RICO element.

*First*, J-M does not plausibly allege that Ms. Salger was involved in directing enterprise affairs or that she participated in any enterprise's operation or management. *Slaney*, 244 F.3d at 597-98. There are no allegations—conclusory or otherwise—that Ms. Salger communicated or coordinated with any Defendant about the purported enterprise or racketeering activities. Instead, J-M's allegations on this issue mimic those against Ms. Gori-Gregory.

J-M alleges that Ms. Salger engaged in RICO conduct through a pattern of racketeering activity, but those allegations fail for the reasons discussed above. *See supra* Section II.B. J-M also alleges that Ms. Salger implemented and supervised the bounty system, but there are no factual allegations supporting that assertion. Compl. ¶¶ 39, 80; *Goren*, 156 F.3d at 727 ("It is not enough, however, for a plaintiff simply to allege the [RICO] elements in boilerplate fashion; instead, she must allege sufficient facts to support each element."). J-M also alleges that Ms. Salger engaged in activities, such as setting firm policy and making personnel and filing decisions, that amount to the routine practice of law, which also fail to state a claim. Compl. ¶ 80; *Walgreen*, 719 F.3d at 856 (dismissing RICO allegations where the conduct did not establish anything "outside the bounds of the parties' normal commercial relationships"); *Crichton*, 576 F.3d at 399 ("Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice."); *Goren*, 156 F.3d at 728 ("Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability.").

*Second*, J-M fails to allege that Ms. Salger engaged in a pattern of racketeering activity based on signing five complaints, filing two Notices of Attorneys' liens, and filing a motion to set a trial date. Compl. ¶ 92. These allegations fail for all the reasons discussed above (*see supra* Section II.B) and because J-M failed to allege that Ms. Salger acted knowingly with an intent to

defraud.  J-M alleges that Ms. Salger must have known these filings were made for an improper purpose because there were no allegations of ACP exposure.  *Id.* ¶ 92(a)-(b), (d), (f)-(h).  But there are myriad ways in which an individual can be exposed to asbestos, including through secondary exposure.  *See, e.g.*, *Williams v. J-M Mfg. Co., Inc.*, 321 Cal. Rptr. 3d 254 (Cal. Ct. App. 2024) (affirming jury verdict against J-M for victim who developed mesothelioma after secondary exposure to asbestos from his brother); *Arana v. A.O. Smith Water Prods.*, 176 N.Y.S.3d 772 (N.Y. Sup. Ct. Nov. 17, 2022).  J-M needed specific facts supporting Ms. Salger's purported knowledge and intent, such as communications reflecting that she intended to mislead J-M.  *See R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1512 (N.D. Ill. 1990); *United States v. Prime Healthcare Servs., Inc.*, 2020 WL 11884833, at *6 (C.D. Cal. 2020) (allegation that CEO supervised inflated logs does not establish "active participation or even willful ignorance").  No such allegations are included in the Complaint.

J-M also alleges that Ms. Salger "instructed depo attorneys" during training sessions "to coach plaintiffs to falsely identify exposure to bounty defendants."  Compl. ¶ 92(i).  This allegation fails Rule 9(b) because J-M never identifies what statements Ms. Salger allegedly made, to whom, or when.  Nor does J-M identify a single case in which any depo attorney allegedly elicited false testimony following those unspecified instructions.  J-M cannot simply lob conclusory allegations to state a claim—much more specificity is required.  *See Menzies*, 943 F.3d at 338-41.

### 3.    Ms. Beavers

J-M's allegations against Ms. Beavers, a partner at Gori Law, are also deficient.  J-M alleges that Ms. Beavers implemented the Bounty System, trained depo attorneys, and made court filings and, as a result, was a member of the Bounty System Enterprise.  Compl. ¶¶ 39, 93, 119, 145.  These allegations fail too.

- 41 -

*First*, J-M has not plausibly alleged that Ms. Beavers engaged in any RICO enterprise conduct. *Reves*, 507 U.S. at 176. There are no factual allegations supporting that Ms. Beavers had any formal or informal position in the enterprise's structure, directed enterprise affairs, participated in the operation or management of the enterprise, or communicated or coordinated with any of the other Individual Defendants about the enterprise. J-M claims that Ms. Beavers "supervised the implementation of the bounty system," but there are no factual allegations supporting those assertions. Compl. ¶¶ 25, 93(g). J-M alleges, again without factual support, that Ms. Beavers was a "lieutenant partner" and trained depo attorneys (*id.* ¶¶ 39, 93(g)), but at most, J-M is describing Ms. Beavers's role at Gori Law, which is not enterprise conduct. *Goren*, 156 F.3d at 728 ("[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability."). J-M also does not allege that she ever communicated or coordinated with any Defendant about the purported enterprise. *See Walgreen*, 719 F.3d at 855; *Ratfield*, 2024 WL 640955, at *3 (conduct allegations insufficient to show anything besides "a standard commercial relationship" because there was no suggestion that defendants "were conducting the affairs of the alleged enterprise as opposed to their own affairs").

*Second*, J-M fails to allege that Ms. Beavers engaged in a pattern of racketeering. *See Ray v. Karris*, 780 F.2d 636, 644 (7th Cir. 1985); *see also supra* Section II.B. J-M alleges that Ms. Beavers served several complaints, summonses, and discovery responses but offers no facts supporting that she knowingly participated in these acts with an intent to defraud. Compl. ¶ 93. J-M alleges that Ms. Beavers must have known these filings were made for an improper purpose because there were no allegations of exposure to ACP, but those conclusory allegations fail for the same reasons discussed above. *See supra* Section II.B.

The Complaint also alleges that Ms. Beavers conducted periodic training sessions for depo attorneys, "including training on identifying 'high-value' versus 'low-value' defendants and the types of testimony required to maximize settlement values against bounty defendants." Compl. ¶ 93(g). Even taking these allegations at face value, there is nothing fraudulent about seeking to maximize settlement values in litigation. Regardless, these allegations fail Rule 9(b). J-M never identifies what statements Ms. Beavers allegedly made, to whom, or when. Nor does J-M identify a single case in which any depo attorney allegedly elicited false testimony following those unspecified instructions. *See Menzies*, 943 F.3d at 338-41.

### 4.    Mr. Steinmeyer

J-M's allegations against Mr. Steinmeyer largely mirror those against Ms. Beavers. The Complaint alleges that Mr. Steinmeyer implemented the Bounty System, trained depo attorneys, and issued summonses to J-M, making him a member of the Bounty System Enterprise. Compl. ¶¶ 39, 94, 119, 145. These allegations fail for the same reasons discussed above.

*First*, J-M fails to plausibly allege any participation by Mr. Steinmeyer in the operation or management of the enterprise. There are no factual allegations supporting that Mr. Steinmeyer had any formal or informal position in the enterprise's structure, directed enterprise affairs, participated in the operation or management of the enterprise, or communicated or coordinated with any of the other Individual Defendants about the enterprise. J-M also provides no detail as to how Mr. Steinmeyer implemented or participated in the implementation of the Bounty System and does not provide any specificity about any trainings he purportedly led for the depo attorneys. Nor does J-M allege any communication or coordination involving Mr. Steinmeyer and anyone else about any purported enterprise. *See Walgreen*, 719 F.3d at 855.

- 43 -

*Second*, J-M also fails to allege that Mr. Steinmeyer engaged in a pattern of racketeering activity. *See supra* Section II.B.  J-M alleges that Mr. Steinmeyer issued several summonses and trained depo attorneys to maximize settlement values.  Compl. ¶ 94.  These allegations are almost verbatim those asserted against Ms. Beavers, and they fail for the same reasons.  J-M has not plausibly alleged that Mr. Steinmeyer acted knowingly or with an intent to defraud by serving summonses on J-M.  There are no particularized allegations supporting his purported knowledge or intent to defraud.  J-M also provides no particularity with respect to allegations about training depo attorneys.  J-M does not identify when these alleged trainings occurred, who was present, what Mr. Steinmeyer allegedly said, or which cases were allegedly impacted by those instructions. J-M's allegations do not come close to stating a claim or satisfying Rule 9(b).

### 5.  Mr. Layloff

J-M's allegations against Mr. Layloff, another Gori Law partner, are very limited.  The Complaint alleges that Mr. Layloff negotiated batch settlements with J-M and trained depo attorneys, and that, as a result, he was a member of the Bounty System Enterprise.  Compl. ¶ 95. These allegations fail.

*First*, J-M has not plausibly alleged that Mr. Layloff engaged in RICO conduct.  J-M includes no factual allegations supporting that Mr. Layloff participated in the operations or management of the enterprise, directed enterprise affairs, had a formal or informal role in the enterprise's chain of command, or communicated or coordinated with other purported members about the enterprise's affairs.  *Reves*, 507 U.S. at 179, 183, 185.  As with other Individual Defendants, while J-M states that Mr. Layloff "implemented the scheme through training, supervision, and settlement negotiations," J-M provides no detail as to *how* Mr. Layloff

implemented the fraudulent scheme or what trainings Mr. Layloff purportedly provided for the depo attorneys.  Compl. ¶¶ 95, 145; *see Menzies*, 943 F.3d at 338-41.

*Second*, J-M also fails to plausibly allege Mr. Layloff engaged in a pattern of racketeering. *See Ray*, 780 F.2d at 644.  The Complaint alleges that Mr. Layloff "negotiated with defense counsel via interstate wires . . . to achieve dozens of batch settlement agreements with [J-M]" that bundled "cases with coached product identifications" with "objectively baseless cases filed solely as bargaining chips."  Compl. ¶ 95(a).  Mr. Layloff also allegedly signed and transmitted via interstate wires "settlement paperwork, release agreements, and dismissal stipulations for batch settlements."  *Id.* ¶ 95(b).  J-M further alleges that Mr. Layloff provided trainings to depo attorneys "on techniques for using product identification booklets to coach witnesses," including on "how to guide plaintiffs through the booklets to 'recognize' products they never actually encountered." *Id.* ¶ 95(c).

Again, J-M's allegations fall far short of the Rule 9(b) requirements.  J-M does not identify any specific batch settlements, any cases that contained "coached product identifications" (or what the false identifications were), any cases that were "objectively baseless filed solely as bargaining chips," and any statements Mr. Layloff made when negotiating settlements (let alone any *false* statements he made).  Nor does J-M specify the fraudulent settlement paperwork, releases, or dismissal stipulations Mr. Layloff signed and transmitted, or what false information was included in any of these routine litigation documents.  As to depo trainings, the Complaint provides no details, such as when the trainings allegedly occurred, who was present, what Mr. Layloff allegedly said, or in what cases the "techniques" were used by depo attorneys in depositions or otherwise.

The Complaint also includes no allegations supporting that Mr. Layloff knowingly participated in racketeering acts with an intent to defraud by negotiating settlements or providing

training to depo attorneys.  In fact, J-M nowhere alleges, even in conclusory fashion, that Mr. Layloff acted with an intent to defraud.  These allegations do not come close to stating a claim against Mr. Layloff.  *Goren*, 156 F.3d at 728.

### D.      J-M Fails to Plead a Conspiracy to Violate 18 U.S.C. § 1962(c) (Count V)

"Because [J-M] has failed . . . to allege a legal basis for a substantive RICO claim it follows that [it] lacks a legal basis for a conspiracy claim under RICO."  *White v. Hill*, 2023 WL 4491469, *3 (S.D. Ill. July 12, 2023) (citation omitted); *see Jenkins*, 2026 WL 507360, at *5 (same); *Stachon*, 229 F.3d at 677 (same).[6]  J-M's conspiracy claim also fails under Rule 9(b), which it must satisfy, because the Complaint does not include particularized allegations of an agreement to commit an unlawful act, which is the "essence of a conspiracy."  *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003); *Midwest Grinding Co., Inc.*, 976 F.2d at 1020.  "It is well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of a conspiracy."  *Goren*, 156 F.3d at 733.

Yet, J-M asserts in conclusory fashion that "each Individual Defendant knew about and agreed to facilitate the overall purpose of the scheme."  Compl. ¶¶ 140, 145-46.  The absence of factual allegations supporting any such agreement is glaring.  Nowhere does J-M plausibly allege a meeting of the minds or even an implicit agreement, much less an agreement to perform an unlawful act.  Nor has J-M alleged any specific communications among the enterprise members that would plausibly support an agreement among the Individual Defendants.  The only allegations even linking any of the Individual Defendants together are allegations that Ms. Salger, Ms.

---

[6]      *Salinas v. United States*, 522 U.S. 52, 61-65 (1997) is not to the contrary.  *Salinas*, which was an appeal of a criminal conviction, held that a defendant may be liable for RICO conspiracy, even if he did not commit a substantive RICO violation, where the defendant's co-conspirator was convicted of a substantive RICO violation.  *Id.* at 65.

Beavers, and Mr. Steinmeyer were all named in the signature blocks of certain court filings and litigation documents. *See, e.g.*, *id.* ¶¶ 92(a), 93(a), 94(a). J-M's conclusory conspiracy-based RICO claims do not satisfy the heightened pleading standard of Rule 9(b) and must be dismissed.

## III. J-M FAILS TO STATE RICO CLAIMS BASED ON THE PURPORTED INVESTMENT OF RACKETEERING PROCEEDS UNDER 18 U.S.C. § 1962(A)

J-M raises two additional RICO claims—a substantive claim for the purported reinvestment of racketeering proceeds under 18 U.S.C. § 1962(a) against Gori Law (Count III) and a conspiracy claim to violate the same provision against all Defendants (Count IV). These claims fail for many of the same reasons discussed above and other reasons.

### A. J-M's Claim for the Investment of Racketeering Proceeds Fails (Count III)

To state a claim under § 1962(a), J-M must plausibly allege that Gori Law: "(1) received income from a pattern of racketeering activity; (2) used or invested that income in the operation of an enterprise; and (3) caused the injury complained of by the use or investment of racketeering income in an enterprise." *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 398-99 (7th Cir. 2009). The Complaint fails at each element.

*First*, as detailed above, J-M has not plausibly alleged a pattern of racketeering activity, which is fatal to its § 1962(a) claim. *Lachmund v. ADM Inv. Servs.*, 191 F.3d 777, 785 (7th Cir. 1999); *see supra* Section II.B. J-M also does not include any factual allegations, let alone with the particularity required by Rule 9(b), showing that Gori Law received any proceeds from those racketeering activities. *See supra* Section II.B.1-2.

*Second*, J-M has not plausibly alleged that Gori Law used or invested racketeering proceeds in the Gori Firm Enterprise. The claim language alleges that Gori Law used proceeds for advertising, to fund bounty payments, to hire additional depo attorneys, and to fund budgets for depo attorneys (Compl. ¶ 133), but there is not a single factual allegation in the preceding 130-

plus paragraphs supporting those assertions. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (holding "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is insufficient to state a claim).

*Finally*, for similar reasons, J-M has not plausibly alleged that the purported investment of racketeering proceeds caused injury. J-M claims that the reinvestment generated additional fraudulent cases and sustained the bounty system (Compl. ¶ 134), but again, there is not a single factual allegation in the preceding 130-plus paragraphs supporting that claim. *Id*. J-M also cannot state a claim by alleging that its injuries were caused by the predicate racketeering acts, which is the crux of its allegations here. *See, e.g.*, *Vicom, Inc.*, 20 F.3d at 778 n.6 (collecting cases).

### B.    J-M's Conspiracy Claim Concerning Investment Proceeds Fails (Count IV)

J-M's conspiracy claim against all Defendants fails because J-M failed to state a substantive claim for the investment of racketeering proceeds. *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 210 F. Supp. 3d 1022, 1037 (S.D. Ill. 2016) (dismissing conspiracy claim under § 1962(d) "because Plaintiffs do not allege that [defendant] violated § 1962(a)"). J-M's conspiracy claim also fails under Rule 9(b). J-M does not include a single factual allegation reflecting that anyone communicated about or agreed to reinvest racketeering proceeds in the Gori Firm Enterprise.

## IV.    J-M'S STATE LAW CLAIMS FAIL

### A.    J-M Fails to State a Claim for Common Law Fraud (Count VI)

J-M fails to state a claim for common law fraud, which is subject to Rule 9(b). *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). J-M needed to plausibly allege: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d

824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496 (1996)). J-M failed to allege elements (1), (2), (3), and (5) for the reasons discussed above in Section II.B.

J-M also has not alleged reliance. To the contrary, J-M admits that it did not believe, and sought to disprove, the allegations in litigation documents. *See, e.g.*, Compl. ¶ 73 ("J-M Manufacturing exercised reasonable diligence by defending each case, seeking discovery, and challenging weak claims."); *id.* ¶ 58 (alleging that Gori Law brought cases where it was "legally impossible" that the plaintiff or decedent was exposed to J-M's products). Regardless, any purported reliance by J-M on Defendants' alleged representations would not be "reasonable" because (i) Gori Law represented an opposing party in each litigation, and (ii) J-M admits distrust of asbestos plaintiffs and plaintiffs' law firms. *Id.* ¶¶ 2, 7-9; *see Tocco v. Richman Greer Pro. Ass'n*, 553 F. App'x 473, 475 (6th Cir. 2013) ("Reasonable reliance by a party upon an attorney's representations cannot exist where the interests of that party are adverse to those of the attorney's client."). Those facts contradict any assertion that J-M has ever relied on any asbestos plaintiffs' or their counsel's representations during litigation and settlement negotiations. Instead, J-M's allegations taken as a whole show that its decisions to settle were motivated by other factors, such as "avoid[ing] a runaway verdict." Compl. ¶ 54.

### B. J-M Fails to State a Claim for Unjust Enrichment or Civil Conspiracy (Counts VII and VIII)

Because J-M's unjust enrichment claim rests on the "same improper conduct" as its other claims, it must be dismissed for the same reasons. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against

the plaintiff is dispositive of the unjust enrichment claim as well."); *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1025 (2009) (same).

J-M's civil conspiracy claim must be dismissed for similar reasons. Civil conspiracy is not a standalone claim and requires proof of an underlying tort. *See Bills v. Hughes*, 2025 WL 1294825, at \*5 (S.D. Ill. May 5, 2025); *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507-09 (7th Cir. 2007). For the reasons discussed throughout this memorandum, J-M has failed to allege any underlying tortious conduct or any agreement between Defendants to perform a tortious act. Thus, J-M's civil conspiracy claim fails.

## CONCLUSION

Based on the foregoing, the Court should dismiss J-M's Complaint. Because amendment would be futile given the threshold *Noerr-Pennington* immunity from suit and other fundamental defects in J-M's claims, the Complaint should be dismissed with prejudice. *See, e.g.*, *Florance v. Barnett*, 2023 WL 7017085, at \*3 (7th Cir. Oct. 25, 2023) (affirming dismissal with prejudice "without affording [plaintiff] the chance to amend his pleadings because amendment would be futile"); *Jenkins*, 2026 WL 507360, at \*5-6 (dismissing RICO claim with prejudice).

Dated: April 21, 2026

Respectfully submitted,

*/s/ Ryan J. Mahoney*

Ryan J. Mahoney (State Bar No. 6290113)
ryan@themahoneylawfirm.com
**THE MAHONEY LAW FIRM**
2220 South State Route 157, Suite 250
Glen Carbon, IL 62034
Tel: (618) 961-8287

Neal K. Katyal (admitted *pro hac vice*)
NKatyal@milbank.com
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20003
Tel: (202) 835-7505

Matthew J. Laroche (admitted *pro hac vice*)
Lacey K. Reimer (admitted *pro hac vice*)
Alexander S. Ruppert (admitted *pro hac vice*)
mlaroche@milbank.com
lreimer@milbank.com
aruppert@milbank.com
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000

*Counsel for Defendants The Gori Law Firm,*
*Beth Gori-Gregory, Sara Salger,*
*Erin Beavers, Jason Steinmeyer, and*
*Christopher Layloff*