## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| J-M MANUFACTURING COMPANY, INC.,<br><br>               Plaintiff,<br><br>v.<br><br>THE GORI LAW FIRM, BETH GORI-GREGORY, SARA SALGER, ERIN BEAVERS, JASON STEINMEYER, CHRISTOPHER LAYLOFF, AND JOHN AND JANE DOES 1-25,<br><br>               Defendants. | Case No. 3:26-cv-00094-SPM |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 1

I.      THE FIRST AMENDMENT'S *NOERR-PENNINGTON* DOCTRINE BARS J-M'S RICO COMPLAINT ........................................................................................... 1

II.     J-M FAILS TO STATE A RICO CLAIM IN COUNTS ONE AND TWO ....................... 5

        A.    J-M Has Not Adequately Alleged a RICO Enterprise ............................. 5

        B.    J-M's Complaint Fails Rule 9(b) ............................................................ 7

        C.    J-M's Allegations Against the Individual Defendants Fail .................... 9

III.    J-M FAILS TO STATE A RICO CLAIM BASED ON THE PURPORTED INVESTMENT OF RACKETEERING PROCEEDS IN COUNT THREE .................... 10

IV.     J-M FAILS TO PLEAD A RICO CONSPIRACY IN COUNTS FOUR AND FIVE ..... 11

V.      THE STATE LAW CLAIMS MUST BE DISMISSED .................................................. 12

CONCLUSION ............................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Albrechtsen v. Bd. of Regents*,
    309 F.3d 433 (7th Cir. 2002) ...................................................................................10, 11

*Alioto v. Town of Lisbon*,
    651 F.3d 715 (7th Cir. 2011) .......................................................................................8, 9

*Aljindi v. United States*,
    2021 WL 750835 (C.D. Cal. 2021)............................................................................10, 11

*Apple, Inc. v. Motorola Mobility, Inc.*,
    886 F. Supp. 2d 1061 (W.D. Wis. 2012) ........................................................................2

*Boyle v. United States*,
    556 U.S. 938 (2009)........................................................................................................7

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) .......................................................................................11

*Broyles v. Wilson*,
    812 F. Supp. 651 (M.D. La. 1993)................................................................................6

*Carthan-Ragland v. Standard Bank & Tr.*,
    2012 WL 1658244 (N.D. Ill. 2012) ...............................................................................9

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)........................................................................................................5

*Connick v. Suzuki Motor Co.*,
    174 Ill. 2d 482 (1996) ..................................................................................................12

*Drobny v. JP Morgan Chase Bank, NA*,
    929 F. Supp. 2d 839 (N.D. Ill. 2013) ............................................................................9

*Dudley Enters., Inc. v. Palmer Corp.*,
    822 F. Supp. 496 (N.D. Ill. 1993) .................................................................................9

*Evans v. City of Chicago*,
    434 F.3d 916 (7th Cir. 2006) .........................................................................................8

*Florance v. Barnett*,
    2023 WL 7017085 (7th Cir. 2023) ..............................................................................12

*Foman v. Davis*,
    371 U.S. 178 (1962).....................................................................................................12

*Ford Motor Co. v. Knight L. Grp.*,
   2025 WL 3306280 (C.D. Cal. 2025)......................................................................................4

*Ford Motor Co. v. Mikhov*,
   2026 WL 691879 (C.D. Cal. 2026)........................................................................................6

*Gomez v. Guthy-Renker LLC*,
   2015 WL 4270042 (C.D. Cal. 2015)......................................................................................5

*Goren v. New Vision Int'l, Inc.*,
   156 F.3d 721 (7th Cir. 1998) ...............................................................................................10

*Gress v. SafeSpeed, LLC*,
   2021 WL 3472631 (N.D. Ill. 2021) .......................................................................................8

*Harris Custom Builders, Inc. v. Hoffmeyer*,
   1994 WL 329962 (N.D. Ill. 1994) .........................................................................................9

*In re Humira (Adalimumab) Antitrust Litig.*,
   465 F. Supp. 3d 811 (N.D. Ill. 2020) .................................................................................2, 4

*In re Innovatio IP Ventures, LLC Patent Litig.*,
   921 F. Supp. 2d 903 (N.D. Ill. 2013) ..................................................................................12

*Int'l Star Registry of Ill., Ltd. v. RGIFTS Ltd.*,
   2025 WL 2766304 (N.D. Ill. 2025) .......................................................................................3

*J-M Mfg. Co., Inc. v. Simmons Hanly Conroy, LLP*,
   2025 WL 843854 (N.D. Ill. 2025) .........................................................................................5

*Jenkins v. Wigginton*,
   2026 WL 507360 (S.D. Ill. 2026)........................................................................................11

*Masterson v. Cheetah Mobile, Inc.*,
   2018 WL 5099505 (C.D. Cal. 2018)......................................................................................7

*McDonald v. Schencker*,
   18 F.3d 491 (7th Cir. 1994) ..................................................................................................9

*Mercatus Group, LLP v. Lake Forest Hospital*,
   641 F.3d 834 (7th Cir. 2011) ................................................................................................3

*Navient Sols., LLC v. Law Offs. of Jeffrey Lohman, P.C.*,
   2020 WL 1867939 (E.D. Va. 2020).......................................................................................3

*New W., L.P. v. City of Joliet*,
   491 F.3d 717 (7th Cir. 2007) .............................................................................................2, 4

*Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*,
  863 F. Supp. 2d 732 (N.D. Ill. 2012) ................................................................4

*Rackemann v. LISNR, Inc.*,
  2018 WL 4574342 (S.D. Ind. 2018) .................................................................3

*Schmees v. HC1.COM, Inc.*,
  77 F.4th 483 (7th Cir. 2023) ...........................................................................2

*Tocco v. Richman Greer Prof'l. Ass'n*,
  553 F. App'x 473 (6th Cir. 2013) ...................................................................12

*U.S. Futures Exch., LLC v. Bd. of Trade of Chi., Inc.*,
  953 F.3d 955 (7th Cir. 2020) ........................................................................1, 2

*Uber Technologies v. Simon & Simon P.C.*,
  2026 WL 1284178 (E.D. Pa. 2026) ..................................................................3

*Uni\*Quality, Inc. v. Infotronx, Inc.*,
  974 F.2d 918 (7th Cir. 1992) ...........................................................................7

*United States v. Dunkel*,
  927 F.2d 955 (7th Cir. 1991) .........................................................................10

*United States v. Griffin*,
  660 F.2d 996 (4th Cir. 1981) ...........................................................................6

*United States v. Turkette*,
  452 U.S. 576 (1981) ......................................................................................5, 7

*Vasquez v. Ind. Univ. Health, Inc.*,
  2024 WL 3610125 (S.D. Ind. 2024) .................................................................4

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
  20 F.3d 771 (7th Cir. 1994) ...........................................................................11

*Webb v. Quintairos, Prieto, Wood & Boyer, P.A.*,
  2025 WL 843400 (N.D. Ill. 2025) ....................................................................8

*White v. Hill*,
  2023 WL 4491469 (S.D. Ill. 2023) .................................................................11

## PRELIMINARY STATEMENT

J-M's opposition only serves to confirm why its retaliatory RICO claims must be dismissed. Faced with multiple dispositive arguments that lay bare the Complaint's deficiencies, J-M ignores arguments and governing case law, mischaracterizes the Complaint's allegations, makes new factual assertions not included in the Complaint, and substitutes rhetoric for well-pleaded allegations. J-M targets media headlines with claims of a bounty system and multi-year fraud, but when pressed to support those claims, it fails to identify a single case in which anything like that ever occurred. In fact, despite claiming that many of Defendants' cases were facially deficient, J-M failed to identify any case that it litigated and won.

J-M's clear objective is to taint Defendants' reputations with hyperbolic allegations of fraud irrespective of what the evidence shows. J-M's approach has had devastating consequences for the lawyers and law firm who have been dragged through the mud based on J-M's hyperbolic pleadings. This case has always been about destroying the reputation and business of one of J-M's primary adversaries regardless of the facts or the law. The Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I.  THE FIRST AMENDMENT'S *NOERR-PENNINGTON* DOCTRINE BARS J-M'S RICO COMPLAINT

J-M does not dispute that the Complaint burdens petitioning activity under the *Noerr-Pennington* doctrine or that the sham exception does not apply to cases it settled. J-M's sole contention is that the "extraordinarily narrow" sham exception applies to **some** of Defendants' petitioning activity. *U.S. Futures Exch., LLC v. Bd. of Trade of Chi., Inc.*, 953 F.3d 955, 963 (7th Cir. 2020) (citation modified). It does not.

1.    *The Objective Baselessness Exception Fails*. J-M argues (Dkt. 57 at 8-9) that eight cases were objectively baseless because the complaints allegedly did not make out a claim for primary exposure to J-M's products. But J-M is simply arguing that it has one potential defense to those claims given that J-M has been found liable on other theories, including secondary exposure. That is miles away from plausibly alleging objective baselessness, which means "frivolous efforts" that were not "reasonably calculated to elicit a favorable outcome." *U.S. Futures Exch., LLC*, 953 F.3d at 963. ***Indeed, J-M has not alleged that one of those eight cases was resolved in its favor or even voluntarily dismissed***. *See, e.g.*, *New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) (rejecting argument that defendant filed sham lawsuits when "none has been adjudicated in [plaintiff's] favor" and affirming dismissal on *Noerr-Pennington* grounds).[1]

Faced with these pleading failures, J-M argues that it was Defendants' burden to point to something in the record supporting a secondary exposure theory. J-M has the process backwards. J-M "has the burden of showing" objective baselessness, but the Complaint does not allege anything supporting that there was no viable theory of liability in those cases. *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1077 (W.D. Wis. 2012); *see also In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 830 (N.D. Ill. 2020). J-M suggests that secondary exposure was not possible in the *Mallam* case because J-M purportedly never made talcum powder. But J-M did not allege that in the Complaint, and J-M cannot "smuggle" that information into the case through motion to dismiss briefing. *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023). In any event, the *Mallam* complaint was not limited to talcum powder.

---

[1]    J-M argues (Dkt. 57 at 9 n.2) that the sham exception applies in *Podorski* because Defendants did not cite a case holding that the sham exception cannot apply if "litigation was defeated on jurisdictional grounds." The Complaint does not allege that *Podorski* was dismissed at all. Regardless, Defendants' point is that J-M could have moved to dismiss *Podorski* for failure to state a claim based on a purported lack of primary exposure but strategically chose not to, which undercuts J-M's assertion in this subsequent RICO action that *Podorski* was baseless on that ground. Having no answer, J-M ignored that argument.

Compl. ¶ 61 ("Mallam developed mesothelioma as a result of his exposure to asbestos contained in *various products*…distributed by the named defendants, including J-M Manufacturing.").[2]

J-M next (Dkt. 57 at 9-10) points to the alleged dismissal rate but ignores the Complaint's allegations. The Complaint alleges that Gori Law and J-M settled cases as part of global resolutions in which J-M agreed to pay on some cases and Gori Law agreed to dismiss others, while maintaining flexibility to use settlement funds to pay victims in settled and dismissed cases. Dkt. 54 at 15 (citing Compl. ¶ 53). Those allegations are markedly different from those in *Uber Technologies v. Simon & Simon P.C.*, 2026 WL 1284178 (E.D. Pa. 2026), where the underlying cases were dismissed following discovery demands, supporting an inference that plaintiffs did not intend to litigate those claims. *Id.* at *10. J-M does not allege that Defendants dismissed a single case based on any litigation demands made by J-M. Rather, cases were dismissed as part of global resolutions, which on their face reflect a practical solution allowing J-M to resolve exposure and Gori Law to compensate numerous clients. J-M overlooked that argument too.

2.      *The Misrepresentation Exception Fails.* J-M argues (Dkt. 57 at 11-12) that a misrepresentation may be material if it led to a settlement. J-M misreads *Mercatus Group, LLP v. Lake Forest Hospital*, 641 F.3d 834, 843 (7th Cir. 2011), which held that the exception applies only where a misrepresentation was "material, in the sense that it actually altered the outcome of the proceeding." Defendants have identified no court, including *Mercatus*, that has expanded this inquiry to cover settlements allegedly caused by false evidence. To the contrary, courts have

---

[2]   J-M cites cases that declined to reach the *Noerr-Pennington* doctrine at the motion to dismiss stage, but those cases are nothing like this one. Dkt. 57 at 7; *Int'l Star Registry of Ill., Ltd. v. RGIFTS Ltd.*, 2025 WL 2766304, at *6 (N.D. Ill. 2025) (tortious interference claim involving alleged violations of a settlement agreement); *Navient Sols., LLC v. Law Offs. of Jeffrey Lohman, P.C.*, 2020 WL 1867939, at *4 (E.D. Va. 2020) (complaint did not allege burden on petitioning activity); *Rackemann v. LISNR, Inc.*, 2018 WL 4574342, at *6 (S.D. Ind. 2018) (similar). Regardless, those cases stand for the unremarkable proposition that the court cannot reach the *Noerr-Pennington* doctrine when the "defense [does not] clearly appear on the face of the complaint." *Int'l Star Registry*, 2025 WL 2766304, at *6. It does here. *See* Mot. at 11-13.

consistently held that alleged misrepresentations that did not impact "the *government's* (*i.e.*, the judge's) action" are immaterial under *Noerr-Pennington*. *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 742 (N.D. Ill. 2012); *see also Vasquez v. Ind. Univ. Health, Inc.*, 2024 WL 3610125, at *5 (S.D. Ind. 2024) (misrepresentations, even if "intentionally false," did not "'actually alter[] the outcome of the proceeding'" where "the state took no action").

Regardless, J-M did not identify any case in which a purportedly fraudulent product identification led to a settlement or other disposition against J-M. J-M's two examples of alleged misrepresentations only underscore the point. J-M argues (Dkt. 57 at 12) that there were false product identifications in the complaints in *Mallam* (because J-M never made talcum powder) and *Ramirez* (because plaintiff's work history ended before J-M existed), but those cases did not settle. Those allegedly false product identifications also could not cause any settlement because J-M argues that the complaints are facially deficient. J-M also alleged in the Complaint that it settled cases "to avoid a runaway verdict" (Dkt. 1, Compl. ¶ 54), not because of the purported merits of any claim. Settlement as a rational economic choice is the opposite of a fraud-induced outcome.

\*\*\*

J-M has not come close to plausibly alleging that the sham exception applies to Defendants' conduct. J-M has not identified a single case that resolved in its favor or any purported misrepresentation that led to a settlement. This suit is a clear attempt to reopen past proceedings to make arguments J-M strategically chose not to make at the time. Defendants are not aware of any case allowing such a claim to proceed past the motion to dismiss stage, and many others have dismissed similar claims. *See, e.g.*, *New W., L.P.*, 491 F.3d at 722; *Ford Motor Co. v. Knight L. Grp.*, 2025 WL 3306280, at *9-12 (C.D. Cal. 2025); *Rubloff Dev. Grp.*, 863 F. Supp. 2d at 743; *In re Humira*, 465 F. Supp. 3d at 830.

## II.   J-M FAILS TO STATE A RICO CLAIM IN COUNTS ONE AND TWO

Even if J-M could get past *Noerr-Pennington*, its attempt to state a RICO claim by characterizing Defendants' routine legal activities as a racketeering enterprise fails as a matter of law. Congress did not intend the RICO statute to be used in this manner. *United States v. Turkette*, 452 U.S. 576, 584 (1981) (RICO addresses establishment of "wholly illegal enterprises" or "infiltration" of legitimate business organizations).

### A.   J-M Has Not Adequately Alleged a RICO Enterprise

1.   *No Distinct Enterprise*. J-M does not dispute that it named Gori Law as a RICO person and RICO enterprise, or that Gori Law allegedly took actions in furtherance of the fraudulent scheme as a RICO person. Those concessions doom Counts One and Two because "a corporate person cannot violate [RICO] by corrupting itself." *J-M Mfg. Co., Inc. v. Simmons Hanly Conroy, LLP*, 2025 WL 843854, at *7 (N.D. Ill. 2025) (citation modified); Mot. at 18-19.

J-M argues (Dkt. 57 at 13) that its claims can survive because Gori Law is not named as a defendant in Counts One and Two. But accepting J-M's argument would make RICO's distinctiveness jurisprudence a dead letter. Any time a defendant wanted to avoid an obvious distinctiveness issue (as J-M plainly does here given its prior dismissal in the *Simmons* action on distinctiveness grounds), he could simply omit the RICO person as a named defendant from the substantive RICO count. This is nothing like what happened in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 164 (2001), which involved a corporate enterprise that was not also alleged to be a RICO person. Defendants are not aware of any RICO case in which such a pleading practice survived a motion to dismiss, and this should not be the first. *Gomez v. Guthy-Renker LLC*, 2015 WL 4270042, at *8-11 (C.D. Cal. 2015) ("The substantive requirements for RICO liability cannot be circumvented through sophistic pleading practices.").

2.      *No Common Purpose for Any Enterprise*. J-M's common purpose allegations boil down to this: Defendants conducted legitimate business activity (representing clients in asbestos litigation) at times in a fraudulent manner (by purportedly instructing witnesses to make false product identifications) and, therefore, had a common purpose of filing baseless cases. Case law is abundantly clear that alleging fraudulent actions in furtherance of routine business activity does not establish a common purpose. Dkt. 54, 22-24 (collecting cases). J-M overlooked that case law.

J-M argues (Dkt. 57 at 14) that it does not need to show a common purpose for the Gori Firm Enterprise because the enterprise is a legal entity. But J-M relies solely on a Fourth Circuit decision from 45 years ago that did not involve a legal entity enterprise or hold that a common purpose is not required for such an enterprise. *United States v. Griffin*, 660 F.2d 996, 999 (4th Cir. 1981). J-M is also wrong (at 14) that Defendants cited cases that "all involved association-in-fact enterprises"—Defendants cited decisions dismissing legal entity enterprises for failing to allege a common purpose. Dkt. 54 at 23-24 (citing *Ford Motor Co. v. Mikhov*, 2026 WL 691879, at *15 (C.D. Cal. 2026) and *Broyles v. Wilson*, 812 F. Supp. 651, 657 (M.D. La. 1993)). That requirement is particularly important here because J-M has played fast and loose with its allegations about Gori Law being a RICO person and enterprise. *See supra* Section II.A.1.

As to the Bounty System Enterprise, J-M points to conclusory allegations about the purported bounty system. Dkt. 57 at 15 (citing Compl. ¶¶ 84-86, 119, 121-22). At most, those allegations amount to Gori Law compensating lawyers for successful cases, which is hardly the hallmark of a common purpose to file baseless ones. Equally problematic, there is not a single well-pled allegation supporting that the individual Defendants allegedly came together for this purpose. J-M alleges that this enterprise existed for almost a decade, but it has not identified any communications among the individual Defendants about that enterprise, let alone a common

- 6 -

purpose to file fraudulent cases. This is nothing like the criminal organizations at issue in *Boyle* or *Turkette*, which J-M understandably did not describe in its brief. *Boyle v. United States*, 556 U.S. 938, 941 (2009) (enterprise involved in committing numerous bank robberies); *Turkette*, 452 U.S. at 579 (enterprise involved in drug trafficking, committing arson, and bribing police officers).

3.      *No Ongoing Organization for the Bounty System Enterprise.* J-M's opposition also confirms it failed to plausibly allege an ongoing organization that is separate from the enterprise members and the underlying racketeering acts. J-M points again to allegations about the bounty system but cites one Complaint paragraph about the Gori Firm Enterprise and two conclusory paragraphs with no underlying factual support. Dkt. 57 at 16 (citing Compl. ¶¶ 83, 85, 121). Defendants pointed out all the deficiencies in those allegations, but again, J-M ignored those arguments. Dkt. 54 at 24-25. Defendants also cited numerous cases holding that much more is required to plausibly allege a RICO enterprise with an ongoing organization, but J-M overlooked those cases too. Dkt. 54 at 25 (collecting cases).

**B.      J-M's Complaint Fails Rule 9(b)**

1.      *Bounty System Allegations Fail.* J-M does not attempt to argue that its allegations about the bounty system, fraud playbook, and batch settlements satisfy Rule 9(b). Instead, J-M claims that it should be excused from those heightened pleading requirements because certain facts are within Defendants' possession. That argument can be made in any 9(b) case, but the Rule squarely rejects it. J-M also cannot rely on information obtained from a purported whistleblower while at the same time offering no details of the alleged fraud. *See Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992); *Masterson v. Cheetah Mobile, Inc.*, 2018 WL 5099505, at *3 (C.D. Cal. 2018). J-M contends (Dkt. 57 at 17) that the purported whistleblower "cannot single-handedly supply every operational detail," but the fundamental problem is he provided no details at all. Dkt. 54 at 27-29. According to the Complaint (¶¶ 6, 20), the purported whistleblower

"participated in the scheme" for six years and, yet, J-M does not identify *a single case* in which a false identification allegedly occurred due to the bounty system or fraud playbook.

2.    *The Sample Cases Allegations Fail.* J-M argues (Dkt. 57 at 17-19) that it satisfied Rule 9(b) as to the *Mallam* and *Ramirez* cases because those complaints alleged J-M was responsible for asbestos exposure when it was not. But those allegedly false statements could not have plausibly furthered the fraudulent scheme because J-M has repeatedly described its contemporaneous disbelief of them. J-M's opposition reinforces that point—J-M argues that both cases were facially deficient because the complaints and discovery responses made clear that it was impossible for J-M to be liable. Defendants cited cases dismissing in similar circumstances, but J-M overlooked those cases too. Dkt. 54 at 30-31 (collecting cases).[3]

J-M is also wrong (Dkt, 57 at 19-20) that it connected any purported misrepresentations with cognizable injuries. There is no dispute that *Mallam* and *Ramirez* (as well as the other sample cases) did not settle. J-M claims that defense costs are enough for RICO injury but cites no case supporting that position. Regardless, J-M failed to identify any specific fees it incurred in *Mallam* or *Ramirez*, such as what the fees were for, which attorney incurred them, when the fees were incurred, or how a specific misrepresentation caused J-M to incur those fees. Courts routinely dismiss RICO claims in similar circumstances. *E.g.*, *Gress v. SafeSpeed, LLC,* 2021 WL 3472631, at *9 (N.D. Ill. 2021) ("[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite." (quoting *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006))); *Webb v. Quintairos, Prieto, Wood & Boyer, P.A.*, 2025 WL 843400, at *5 (N.D. Ill. 2025) ("conclusory and speculative" damages allegations insufficient for RICO standing).

---

3    Despite having over 20 additional pages of briefing available for its opposition, J-M chose not to address the other sample cases (and numerous other arguments) and, thus, has waived any arguments about them. *Alioto v. Town of Lisbon*, 651 F.3d 715, 720-21 (7th Cir. 2011) (affirming dismissal of complaint where plaintiff "failed to meet the myriad arguments set out in the defendants' motions to dismiss").

3. *Litigation Activity Is Not a RICO Predicate*. J-M argues (Dkt. 57 at 20) that the Court should not follow the *Kim* rule because the Seventh Circuit has yet to address it, but numerous courts in this Circuit and beyond have held that litigation activities are not racketeering acts. *Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 848 (N.D. Ill. 2013); *Harris Custom Builders, Inc. v. Hoffmeyer*, 1994 WL 329962, at *3-4 (N.D. Ill. 1994); *Carthan-Ragland v. Standard Bank & Tr.*, 2012 WL 1658244, at *2 (N.D. Ill. 2012). J-M also argues (Dkt. 57 at 21) that this case is different because it has alleged a "systemic mass scheme" of fraud, but that is pure hyperbole. The Complaint does not identify any case involving an alleged fraudulent misrepresentation that resulted in a disposition against J-M. J-M's approach only underscores why courts across the country have held that ordinary litigation activities are not racketeering acts.

## C. J-M's Allegations Against the Individual Defendants Fail

1. *Racketeering Activity*. J-M did not respond to Defendants' arguments that it failed to allege that each individual Defendant participated in at least two racketeering acts, as it must to state a RICO claim. *See Dudley Enters., Inc. v. Palmer Corp.*, 822 F. Supp. 496, 502 (N.D. Ill. 1993) (RICO claim "requires plaintiffs to establish that each individual defendant committed at least two predicate acts"). These arguments went beyond what is addressed in the previous section and provided independent reasons why J-M's allegations fail as to each Defendant. Dkt, 54 at 38-39 (Gori-Gregory), 40-41 (Salger), 42-43 (Beavers), 44 (Steinmeyer), 45 (Layloff). Indeed, one of the many arguments Defendants made was that the Complaint did not plausibly allege that any Defendant knowingly participated in racketeering acts with fraudulent intent, which the Seventh Circuit has described as the "[m]ost important[]" element for complaints sounding in fraud. *McDonald v. Schencker*, 18 F.3d 491, 495 (7th Cir. 1994). Yet, J-M does not contest its failure to plead fraudulent intent—that alone justifies dismissing this case. *Alioto*, 651 F.3d at 721 ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons

- 9 -

for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

2.      *RICO Conduct*. J-M only addresses the RICO conduct element (Dkt. 57 at 21-23), but those arguments fail. Instead of engaging with Defendants' arguments, J-M simply repeats the Complaint's conclusory allegations. J-M points to allegations that individual Defendants purportedly "implemented" or "devised" the bounty system but identifies no factual support for them. J-M also relies on allegations that individual Defendants engaged in conduct consistent with the practice of law, such as training and hiring attorneys, filing cases, setting firm policy, and participating in settlement negotiations. Defendants identified RICO cases dismissing similar allegations, but J-M overlooked all but one of those cases too. Dkt. 54 at 38, 40 (collecting cases).

J-M argues (Dkt. 57 at 23) that *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998), is different because J-M's Complaint purportedly "pleads, with specificity," how each individual Defendant implemented the bounty system. But J-M failed to cite a single Complaint paragraph showing any purported "specificity."  J-M does not state a claim by making sweeping, conclusory, and unsupported arguments in its opposition brief about what is purportedly contained in a 57-page complaint with over 160 paragraphs. *Albrechtsen v. Bd. of Regents*, 309 F.3d 433, 436 (7th Cir. 2002) ("'Judges are not like pigs, hunting for truffles buried in' the record." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))); *Aljindi v. United States*, 2021 WL 750835, at *1 (C.D. Cal. 2021) (plaintiff's citation to the "entirety of his evidence" is "no citation at all").

## III.    J-M FAILS TO STATE A RICO CLAIM BASED ON THE PURPORTED INVESTMENT OF RACKETEERING PROCEEDS IN COUNT THREE

J-M's opposition confirms that its § 1962(a) claim fails at every element. J-M failed to plausibly allege a pattern of racketeering activity for all the reasons discussed in the previous

sections. J-M also has not come close to satisfying the other two elements of its § 1962(a) claim with the particularity required by Rule 9(b). J-M points solely to conclusory allegations in Count Three's claim language as its basis for alleging the purported investment of proceeds in the operation of the enterprise and injury from that investment. Dkt. 57 at 24, 26 (citing Compl. ¶¶ 133-34). But there is not a single factual allegation in the preceding 130 paragraphs supporting those assertions, and J-M does not argue otherwise. Accordingly, Count Three must be dismissed.[4] *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## IV.    J-M FAILS TO PLEAD A RICO CONSPIRACY IN COUNTS FOUR AND FIVE

J-M has not identified a single case in which a RICO conspiracy claim survived in the absence of someone committing an underlying RICO violation. This comports with this Court's decisions, which have repeatedly held that where a plaintiff has "failed to allege a legal basis for a substantive RICO claim it follows that he lacks a legal basis for a conspiracy claim under RICO." *White v. Hill*, 2023 WL 4491469, at *3 (S.D. Ill. 2023); *Jenkins v. Wigginton*, 2026 WL 507360, at *5 (S.D. Ill. 2026) (same). Thus, the deficiencies in J-M's substantive RICO claims are reason enough to dismiss Counts Four and Five.

Those claims also fail on their own terms. J-M contends (Dkt. 57 at 26-27) that it plausibly alleged RICO conspiracies but fails to cite a single Complaint paragraph in support. *See Albrechtsen*, 309 F.3d at 436; *Aljindi*, 2021 WL 750835, at *1. Nor has it come close to satisfying Rule 9(b)'s requirement of particularized allegations supporting any purported agreements among Defendants. Dkt. 54 at 46 (collecting cases). J-M's conspiracy claims fail.

---

[4]    J-M devotes several pages responding to Defendants' one-sentence argument that a § 1962(a) claim cannot survive based on injuries caused by the predicate racketeering acts. The majority of courts support Defendants' position. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 n.6 (7th Cir. 1994). Regardless, this Court can take the same approach as *Vicom* and not reach that issue because J-M's claim fails on multiple other grounds. *Id.*

## V.    THE STATE LAW CLAIMS MUST BE DISMISSED

J-M is wrong (Dkt. 57 at 27 n.5) that Defendants did not raise "any immunity to the state-law claims."  Defendants argued that it is immune from suit under the *Noerr-Pennington* doctrine, which bars all of J-M's claims. Mot. at 10-17; *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 911 (N.D. Ill. 2013) ("Accordingly, the *Noerr-Pennington* doctrine can protect petitioning activity to which it applies from [plaintiff's] federal ***and state law claims***." (emphasis added)). Regardless, J-M's state law claims fail on their own terms.

*Common Law Fraud.* J-M argues (Dkt. 57 at 28) that it plausibly alleged reliance because Defendants had "superior knowledge" of the information in their pleadings and discovery responses "about their clients' exposure histories."  But J-M admits distrusting asbestos plaintiffs and plaintiffs' law firms and contemporaneously seeking to disprove the alleged misrepresentations. *See, e.g.*, Compl. ¶¶ 2, 7-9, 73.  That is the antithesis of reliance. *See Tocco v. Richman Greer Prof'l. Ass'n*, 553 F. App'x 473, 475 (6th Cir. 2013). Regardless, J-M still does not identify any particular misstatement (let alone with the particularity required under Rule 9(b)) that it relied on and that caused injury. Even the cases on which J-M relies dismiss in those circumstances. Dkt. 57 at 27 (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996)).

*Unjust Enrichment and Civil Conspiracy*. J-M's unjust enrichment and civil conspiracy claims must be dismissed because its RICO and common law fraud claims fail. J-M offers no independent reason to sustain those claims.

## CONCLUSION

Because amendment is futile, the Court should dismiss the claims with prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Florance v. Barnett*, 2023 WL 7017085, at *3 (7th Cir. 2023).

Dated: June 4, 2026

Respectfully submitted,

*/s/ Ryan J. Mahoney*

Ryan J. Mahoney, #6290113
ryan@themahoneylawfirm.com
**MAHONEY LAW FIRM, LLC**
2220 South State Route 157, Suite 250
Glen Carbon, IL 62034
Tel: (618) 961-8287

Neal K. Katyal (admitted *pro hac vice*)
nkatyal@milbank.com
**MILBANK LLP**
1101 New York Avenue, NW
Washington, DC 20005
Tel: (202) 835-7505

Matthew J. Laroche (admitted *pro hac vice*)
Lacey K. Reimer (admitted *pro hac vice*)
Alexander S. Ruppert (admitted *pro hac vice*)
mlaroche@milbank.com
lreimer@milbank.com
aruppert@milbank.com
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000

*Counsel for Defendants The Gori Law Firm,*
*Beth Gori-Gregory, Sara Salger,*
*Erin Beavers, Jason Steinmeyer, and*
*Christopher Layloff*

- 13 -