**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| J-M MANUFACTURING COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE GORI LAW FIRM, BETH GORI-GREGORY, SARA SALGER, ERIN BEAVERS, JASON STEINMEYER, CHRISTOPHER LAYLOFF, and JOHN AND JANE DOES 1-25,<br><br>Defendants. | ) | Case No. 3:26-cv-00094-SPM<br><br>Hon. Stephen P. McGlynn<br>District Judge |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO STAY DISCOVERY**

## I. INTRODUCTION

Six days ago, this Court considered Defendants' request to stay discovery in this case and denied it. Dkt. 67. Defendants have now filed the same motion again. The renewed motion applies the same three-factor test, relies on the same authorities, quotes the same excerpts of the July 15 oral argument, and rests on the same prediction that the fully argued motion to dismiss will succeed. What is new is only this: J-M served the third-party subpoenas this Court expressly authorized in its August 14 Order, and, after the parties' Rule 26(f) conference, served one set of document requests and one set of interrogatories on the Gori Firm. In Defendants' telling, the ordinary operation of the Federal Rules is an emergency that justifies halting the case they have been called to answer.

The centerpiece of the renewed motion is a misreading of the August 14 Order. Defendants quote the Order's observation that their arguments "strongly weigh against allowing all discovery

to go forward" as though the Court had already ruled in their favor on a motion it denied. The Order issued one day after Defendants filed, before J-M had responded, and it decided a narrow question: whether the arguments Defendants advanced justified blocking the limited third-party discovery then at issue. They did not. The Court denied the motion "without prejudice," preserving the question rather than prejudging it. And on that question the burden is Defendants': a party seeking a protective order under Rule 26(c) must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035 (1970)) (cleaned up). Defendants have not attempted that showing. Their only evidence, the Declaration of Matthew Laroche, is a five-paragraph procedural chronology that says nothing about burden.

The discovery refutes the motion's description of it. J-M served eleven document requests and thirteen interrogatories on the Firm alone.[1] Both sets state on their face that they "do not seek, and Plaintiff does not intend them to reach, confidential communications between the Firm and its clients," and both require a Rule 26(b)(5) log for anything withheld. Five of the eleven requests are framed as "documents sufficient to show" or "sufficient to identify," and all of them target discrete, readily identifiable business records: compensation and payroll entries for deposition attorneys; the documents creating and revising the alleged bounty program and bounty list; product-identification booklets; training calendars and attendance records; the January 2021 group settlement papers and allocation worksheets; the trust submissions in thirteen identified Sample Cases; annual settlement revenue; and the Firm's retention policy and litigation hold. The

[1] No discovery has been served on Beth Gori-Gregory, Sara Salger, Erin Beavers, Jason Steinmeyer, or Christopher Layloff.

subpoenas are the ones this Court approved: directed to claimants identified by name in an attached exhibit, keyed to the life of each claim, and subject to instructions that confine data exports to ordinary reporting functions, exclude duplicative medical records, impose attorneys'-eyes-only treatment pending a protective order, and require conferral before any extraordinary cost is incurred.

Before Defendants filed, J-M's counsel invited them to identify "which request number(s) and what the collection actually involves" so the parties could address any genuine burden, and offered to meet and confer on any specific request. Ex. A. Defendants filed this motion just over three hours later without naming one. The motion should be denied.

In the alternative, any stay should be narrow: it should leave the Court-authorized subpoenas and their preservation obligations untouched, keep the September 17 deadline for the Firm's responses and objections so that any disputes mature for prompt resolution, and expire automatically upon the ruling on the motion to dismiss.

## II. BACKGROUND

### A. The Court's August 14 Order

On August 10, 2026, J-M moved for leave to serve Rule 45 document subpoenas on the Delaware Claims Processing Facility ("DCPF") and the ten asbestos personal-injury trusts it administers. Dkt. 65. The motion explained that the trusts' "Claims Data," meaning claimant submissions "together with the records the Trusts and the DCPF generate in processing the claim," is subject to an active, rolling destruction program that had been restrained only by litigation the Delaware Supreme Court ordered dismissed on July 31, 2026. Dkt. 65 at 2–3. The parties held their Rule 26(f) conference on August 12. On August 13, Defendants moved to stay all discovery pending resolution of their motion to dismiss. Dkt. 66.

The next day, the Court granted J-M's motion and denied Defendants'. Dkt. 67. The Court held that "it is appropriate for Plaintiff to proceed with limited early discovery" in light of the scheduled document destruction and authorized J-M to "serve document subpoenas on the Trusts as outlined in their Motion." *Id*. at 2. As to the stay, the Court observed that Defendants' four arguments "strongly weigh against allowing all discovery to go forward, but they hardly apply to allowing limited third-party discovery, which would (1) not interfere with any privilege or right that Defendants may be entitled to, and (2) does not place any burden on Defendants," and denied the motion without prejudice. *Id*. The Order added: "This Order does not limit any interested party from objecting to the contents of the document subpoenas." *Id*. J-M had not yet responded to the motion when it was decided.

**B. The Discovery J-M Served**

On August 14, J-M gave Defendants notice of the Rule 45 subpoenas, and J-M served the authorized subpoenas on August 17. The exemplar Defendants attach (Dkt. 68-4) shows their structure. Each subpoena is limited to "Relevant Claimants," defined as the claimants "identified in Exhibit 1 attached hereto": a list, by name, of the claimants who asserted asbestos personal-injury claims against J-M in the underlying tort actions filed by the Gori Firm. Dkt. 68-4, Sched. A, Def. 10 & Ex. 1. That is the "identified, finite set of claimants that J-M can specify by name" described in the motion this Court granted. Dkt. 65 at 6. The temporal scope is keyed to each claim; responsive material runs "from the earliest record concerning that Claim . . . through the date of production." Dkt. 68-4, Sched. A, Instr. 1. The evidentiary value of the Claims Data lies in the history of each claim: what exposures each claimant asserted, and when.

The subpoenas also carry structural limits the renewed motion nowhere mentions. Structured-data requests are confined to "exports obtainable through ordinary reporting or query

functions" and expressly do "not require new substantive analysis." Dkt. 68-4, Sched. A, Instr. 6. Duplicative medical records are excluded. *Id*. at Instr. 11. Responsive material is to be treated as attorneys'-eyes-only pending the protective order J-M has committed to seek promptly, with a claimant-notice protocol before responsive material is filed or used. *Id*. at Instr. 12. A recipient asserting burden is asked to "describe the affected systems, record volume, search method, and proposed narrower alternative" (*id*. at Instr. 14), and extraordinary costs require an estimate and conferral before they are incurred (*id*. at Instr. 16). Far from expanding beyond the motion the Court granted, the subpoenas defer: Instruction 3 states that J-M "has deliberately limited these requests and reserves, for a later subpoena or an agreed supplemental schedule," categories such as system audit logs and claim-specific communications. Reserving a category is not requesting it.

On August 18, after the Rule 26(f) conference opened party discovery, see Fed. R. Civ. P. 26(d)(1), J-M served its First Set of Requests for Production (eleven requests) and First Set of Interrogatories (thirteen) on the Gori Firm. Dkts. 68-2, 68-3. The requests for production state that they "are limited to the Firm's own business, compensation, accounting, training, settlement-administration, and trust-submission records" (Dkt. 68-2 at 1), and the interrogatories are limited in parallel terms to the Firm's "own case dispositions, compensation structure, training and settlement administration, trust submissions, and record-retention practices" (Dkt. 68-3 at 1). Both sets then add the identical carve-out: they "do not seek, and Plaintiff does not intend them to reach, confidential communications between the Firm and its clients." (Dkt. 68-2 at 1; Dkt. 68-3 at 1.) Both instruct that any document or information withheld on privilege grounds be logged under Rule 26(b)(5). Five of the eleven document requests are framed as "documents sufficient to show" or "sufficient to identify" (Nos. 3, 5, 7, 10, 11). The rest are tied to particular artifacts and events: the documents creating one compensation program (No. 1), the versions of one list (No. 2), the

payments calculated by reference to J-MM Cases (No. 4), the product-identification booklets themselves (No. 6), the papers of one group settlement (No. 8), and the trust submissions in thirteen identified Sample Cases (No. 9). Responses are due September 17, 2026.

### C. The Meet and Confer and This Motion

On August 18, Defendants stated that they would renew their motion to stay. On August 19, J-M's counsel confirmed J-M's opposition and wrote: "If you disagree, please tell us which request number(s) and what the collection actually involves, and we will look at it. A general assertion that responding is 'exceptionally burdensome' gives us (and the Court) nothing to work with." Ex. A. Counsel offered to make time the same week to narrow any specific request. Defendants filed this motion just over three hours later.[2] Neither the motion nor the Laroche Declaration identifies the collection burden of any specific request.

## III. ARGUMENT

### A. Defendants Bear the Burden of Showing Good Cause With Facts, and They Have Offered None

District courts have "extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013). But a party asking the Court to stop discovery bears the burden of justifying that relief. *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009). As this Court has put it: "The party seeking the stay bears the burden of proving that the court should exercise its discretion in staying the case." *Kuklinski v. Binance Cap. Mgmt. Co.*, No. 21-CV-01425-SPM, 2022 WL 3018427, at *1 (S.D. Ill. July 29, 2022) (McGlynn, J.). Rule 26(c) sets the measure of that burden: good cause requires "a particular and specific demonstration

[2] Defendants responded that "[their] position is that all discovery should be stayed and [their] arguments why are not limited to burden." Defendants further said they disagreed with Plaintiff's characterization of the requests, and offered to "confer about that at the appropriate time."



112234015v3

of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil*, 452 U.S. at 102 n.16. Courts in this District then weigh: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Archibald v. Scott Credit Union*, No. 25-CV-01031-JPG, 2025 WL 3119199, at *1 (S.D. Ill. Nov. 7, 2025) (internal quotation omitted). And the pendency of a dispositive motion changes nothing by itself: "Discovery need not cease during the pendency of a motion to dismiss." *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945 n.11 (7th Cir. 1988); *accord Archibald*, 2025 WL 3119199, at *1 ("The filing of a motion to dismiss does not automatically stay discovery."); *Kuklinski*, 2022 WL 3018427, at *1 (same).[3]

Measured against that standard, the renewed motion is empty. Its only evidentiary support is a declaration that recites the parties' scheduling history and authenticates three exhibits. Dkt. 68-1. It offers no burden facts at all: no document volumes, no description of the systems that would have to be searched, no estimate of cost or hours, and no identification of any assertedly privileged material notwithstanding the requests' express carve-out of client communications. For its burden showing, the motion offers adjectives ("extensive," "exceptionally burdensome," "massive"). Adjectives are what the good-cause standard excludes.

The deficiency matters because six days ago the Court denied this same request. A renewed motion had to bring something new. The only new facts are that J-M served the discovery this Court authorized and the Rules permit. Whether that discovery imposes an undue burden turns on

[3] As a corollary to this rule, this Court's case management procedures state: "The Court is mandated to enter a scheduling order and, therefore, very rarely continues Rule 16 Conferences. Rule 16 Conferences will be held in spite of pending dispositive motions, such as a motion to dismiss or a motion to remand." Case Mgmt. Pro. at 2.

specifics, and Defendants, invited to supply those specifics before filing, declined to identify even one. *See* Ex. A.

**B. The August 14 Order Denied a Stay; It Did Not Promise One**

Defendants read the Order's statement that their arguments "strongly weigh against allowing all discovery to go forward" as a commitment to stay party discovery once it was served. Mot. at 1, 6. The Order will not bear that weight. It issued one day after the motion was filed, before J-M responded; no party briefed, and the Court did not analyze, any of the four arguments the sentence references. The Order's operative thesis was that Defendants' arguments "hardly apply" to limited third-party discovery that burdens no defendant and touches no privilege. Dkt. 67 at 2. The Court then denied the motion without prejudice, preserving the question rather than answering it.

Nor does the quoted sentence describe the discovery now at issue. J-M has not asked for "all discovery" to go forward. It has served a limited first wave: one set of document requests and one set of interrogatories, directed to the Firm alone, cabined on their face. If the Order's aside means anything for this motion, it is the framework the Court applied: whether the discovery actually at issue interferes with a privilege or imposes an undue burden on Defendants. On this record, with an express privilege carve-out, a log protocol, discrete business records, and no burden evidence from the movants, the answer is the same as it was on August 14.

### C. Each Of the Three Factors Favors Denial

#### i. A stay would not "simplify" anything that was not equally true six days ago

The motion to dismiss has been fully briefed since June 4 and was argued on July 15. Every consideration Defendants press under this factor, from the motion's asserted strength to its assertedly dispositive character to the *Noerr-Pennington* defense, was before the Court when it denied the first motion to stay. On this factor, the renewed motion is a motion to reconsider without grounds for reconsideration.

Defendants' lead stay authorities only underscore the mismatch. *Archibald* stayed discovery where pro se plaintiffs asked the court to order early discovery, then, in the court's words, "served premature discovery requests" on the defendant, and then moved to compel. 2025 WL 3119199, at *2. The same order recites that a motion to dismiss "does not automatically stay discovery" and that the movant bears the burden of justifying a stay. *Id.* at *1. *Lord* stayed discovery pending a personal-jurisdiction challenge that, if successful, would have left the court without power "to enforce any discovery orders it issued," alongside a fully dispositive early summary-judgment motion. *Lord v. PDD Holdings, Inc.*, No. 23-cv-04729, 2024 WL 5432081, at *2–3 (N.D. Ill. Feb. 28, 2024). Even then, the court committed to lift the stay for jurisdictional discovery should the district judge require it. *Id.* at *1 n.2. This case presents no jurisdictional question, no dispositive summary-judgment motion, and nothing premature about single sets of party discovery served on the heels of the Rule 26(f) conference.

The same pattern runs through the rest of Defendants' stay authorities. *Mirage Wine*, a decision from this District, entered only a "limited stay" pending motions raising standing, and simultaneously directed the defendants to respond to the plaintiffs' pending document requests during the stay because, among other things, the responsive materials already existed and were



112234015v3

"relevant and proportional to the needs of this case." 2024 WL 4581172, at *4. *Vital Proteins* was a partial stay sought by the plaintiff, and it reached only counterclaim-specific discovery: apex depositions of a celebrity officer and the company's founder, plus demands for "all documents and communication[s]" across every product the company sold. Merits discovery on the main claims "proceeded apace," and the party opposing the stay never argued that the discovery at issue was "at risk of damage, destruction, or otherwise becoming unavailable[.]" 2023 WL 5671857, at *1, *4–5. *Simstad* stayed discovery where county officials invoked qualified immunity (the *Harlow* doctrine actually governs). 2008 WL 1914268, at *1–2. And *Trinity Sober Living* is not a discovery decision at all: it denied leave to amend where the plaintiff's "own evidence," a developed record, defeated its sham allegations. 2022 WL 22894890, at *2. In short, Defendants' authorities reserve stays for genuine threshold defects, and even then they let targeted discovery proceed. Neither feature is present here.

*Noerr-Pennington* supplies no immunity from discovery in this Circuit. Defendants' analogy to *Harlow* and *Bilal* borrows the discovery protections of official immunity, as their own footnote concedes. Mot. at 9 n.3. Those protections exist because qualified immunity is "an immunity from suit rather than a mere defense to liability" for public officials. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). *Noerr-Pennington*, by contrast, is an affirmative defense available to private litigants, and Defendants cite no Seventh Circuit decision extending *Harlow*'s discovery bar to it. The three decisions they collect staying discovery on *Noerr-Pennington* grounds are out-of-circuit district court orders. Mot. at 10. The Seventh Circuit decisions Defendants do cite treat the doctrine as nothing of the kind. *New West, L.P. v. City of Joliet*, 491 F.3d 717 (7th Cir. 2007), describes *Noerr-Pennington* as a doctrine that "protects litigation, lobbying, and speech" and is "understood as an application of the first amendment's speech and petitioning clauses." The

opinion never describes the doctrine as an immunity from suit, says nothing about staying discovery, and remanded because "the proper classification" of the challenged suits as shams "remains to be determined." *Id.* at 722. And *Mercatus Group, LLC v. Lake Forest Hospital*, 641 F.3d 834 (7th Cir. 2011), resolved *Noerr-Pennington* questions on summary judgment, after discovery, not as a shield against it. The analogy fails on this record for a further reason: the parties dispute whether the conduct alleged is petitioning at all. The Complaint's core allegations concern out-of-court conduct, including a compensation program paying deposition attorneys a percentage of settlements tied to product identifications, coaching materials, and trust submissions inconsistent with tort-case testimony. The discovery J-M served (compensation records, training records, trust submissions) is aimed at that conduct. A stay entered in the name of *Noerr-Pennington* would not protect petitioning; it would insulate from the facts the antecedent dispute over whether this is petitioning at all.

*Kuklinski*, the decision of this Court on which Defendants lead (Mot. at 9), confirms rather than undermines these points. There, the Court observed that "[t]here is no requirement that discovery cease during the pendency of a motion to dismiss," and declined the movants' invitation to treat their assertedly dispositive motions as a reason to halt the case: "any discussion into the merits of the case is premature and inappropriate at this stage, and this Court is not inclined to circumvent the procedures for the resolution of the various motions to dismiss." 2022 WL 3018427, at *1–2. The limited stay *Kuklinski* entered was fixed at ninety days, was tied to a genuine threshold question of personal jurisdiction over foreign entities, and came with an order that the parties engage in discovery targeted at that threshold question. *Id.* at *2. The sentence Defendants quote ("[s]tays are often deemed appropriate . . .") was this Court's description of the movants'

citation to "a sister district," *In re Clearview AI, Inc. Consumer Privacy Litigation*, 2021 WL 5862495 (N.D. Ill. August 31, 2021), not a holding of this Court. *Id.* at *1.

The efficiency arithmetic also cuts against Defendants. If the motion to dismiss is granted, the burden avoided is modest: by September 17 the Firm owes objections and responses to twenty-four numbered items directed at its own business records. If the motion to dismiss is denied, a stay will simply have parked the case behind an indeterminate date. Defendants call the requested stay "brief," but it has no terminus except a ruling that could issue tomorrow or months from now, while third-party evidence sits exposed to a destruction program this Court has already found warranted expedited action.

**ii. A stay would prejudice J-M in ways this Court has already recognized**

The Court granted expedited third-party discovery because the Claims Data is subject to "scheduled document destruction." Dkt. 67 at 2. A stay that suspends subpoena compliance would reopen the window the Court just closed. Before J-M filed its motion, Defendants represented that they "would not object . . . to a request for a preservation subpoena." Dkt. 65 at 1 n.1. The renewed motion, which asks the Court to halt even the authorized subpoenas, is broader than the position Defendants took on August 10.

Delay also compounds. The claims concern conduct alleged to have begun by 2018. Witnesses include former Firm attorneys and the families of elderly or deceased claimants. Each month of stay is a month of fading memories and dispersing witnesses that no later order can recall.

**iii. The burden factor turns on the discovery actually served, and Defendants never engage it**

The party discovery is narrow on its face. The requests are directed at the Firm's central business records: compensation plans and payroll registers; the documents creating and revising a specific compensation program; product-identification booklets and lists; training calendars,

agendas, and attendance records; the January 2021 group settlement agreement and its allocation worksheets; the trust submissions in thirteen identified Sample Cases; annual settlement-revenue figures; and the Firm's retention policy and litigation hold. Several categories the Firm has already assembled: it drafted and filed the trust submissions, and it generated the litigation hold for this case. J-M does not read these requests to demand custodial e-mail collection in the first instance, and has told Defendants so; if the Firm's central business files prove incomplete, the parties can negotiate a reasonable ESI protocol at that point. Nor do the requests reach the client confidences their carve-out excludes.

Defendants' examples do not survive a reading of the requests. They describe Request No. 3 as an "all documents" request (Mot. at 7); but, in fact, it is a "documents sufficient to show" request. They assert that Request No. 6 "plainly call[s] for privileged information" (id.); however, the product-identification booklets and lists that Request No. 6 seeks are pre-existing compilations, not communications; versions shown to witnesses in litigation carry no privilege; and if the Firm contends some version does, the remedy is the ordinary one, an objection and a log entry, not an order suspending every other request in the case. Defendants' remaining examples go to the merits, not to burden. Count III alleges that the Firm received racketeering income in the form of contingency fees and then invested it in advertising and marketing, bounty payments to deposition attorneys, hiring and expansion, and operational costs, each of which is alleged to have produced additional fraudulent filings against J-M. Compl. ¶¶ 129–136. Request No. 10 and Interrogatory No. 12 ask for the Firm's annual asbestos-settlement revenues and the use of those revenues for advertising, case acquisition, referral payments, and expansion of the asbestos practice. That is the section 1962(a) claim's factual predicate, category for category. The referral-fee interrogatory (No. 11) tracks the allegation that the Firm distributed batch-settlement proceeds as it saw fit and that

"[t]he largest distributions were often allocated to the top referral firms, irrespective of the merits of the case." *Id.* ¶ 53. Relevance disputes dressed as burden do not establish good cause.

The subpoenas track the motion this Court granted, and Defendants' contention that they exceed the "narrowly targeted" discovery described in Docket 65 (Mot. at 6–7) fails on each particular. Docket 65 defined the Claims Data to include "the records the Trusts and the DCPF generate in processing the claim" Dkt. 65 at 2–3, so the document-history and status information Defendants now call "massive" metadata is the very data the Court had before it when it granted leave. That information matters because *when* exposure assertions were created, amended, and submitted, relative to tort-case testimony, is the proof of fabrication. As for the "hundreds of claimants," the motion told the Court the subpoenas would reach "the asbestos claimants who have asserted claims against J-M in the underlying tort actions," an "identified, finite set of claimants that J-M can specify by name." *Id.* at 2, 6. Exhibit 1 to the subpoena is that list.[4] The claimed absence of any "time limitation" misreads Instruction 1, which bounds each request by claim; a calendar cutoff would amputate claim histories while excluding nothing else. And Instruction 3's reservation defers additional categories "for a later subpoena or an agreed supplemental schedule." It demands nothing now.

In any event, subpoena scope is not before the Court on this motion. The August 14 Order authorized the subpoenas and expressly preserved objections "from any interested party." The trusts and the DCPF are sophisticated entities represented by counsel; they may serve objections under Rule 45(d)(2)(B) or move for relief in the district of compliance. Fed. R. Civ. P. 45(d)(3).

[4] Further, the Court was well aware from the complaint, the motion to dismiss briefing, and oral argument, that over 400 cases were brought by the Gori Law Firm against J-M within the time period relevant to this action.

Defendants themselves "reserve their right to move to quash or pursue any other available remedy." Mot. at 16. That reservation concedes that a motion to stay is not the vehicle for scope disputes. And a request that this Court suspend subpoenas it authorized six days ago is, in substance, a motion to reconsider the August 14 Order, though Defendants identify no error in it.

## IV. ALTERNATIVELY, ANY STAY SHOULD BE NARROW AND SELF-TERMINATING

If the Court concludes that some relief is warranted notwithstanding the absence of any factual showing, the relief should match the rationale Defendants offer. First, the subpoenas should proceed: they were separately authorized on a preservation rationale that a stay would defeat, and at minimum all preservation obligations should remain in force, with compliance restructured as preserve now and produce later rather than suspended. Second, the September 17 deadline for the Firm's written responses and objections should stand: objections impose no meaningful burden, and requiring them ensures that any privilege or scope disputes are crystallized for prompt resolution however the motion to dismiss is decided. Third, requests that impose no colorable burden should proceed in any event: Request No. 11 and Interrogatory No. 13 (retention policy and litigation hold) and Request No. 9 and Interrogatory No. 10 (trust submissions in the thirteen Sample Cases). Fourth, any stay should expire automatically upon the Court's ruling on the motion to dismiss, without further motion practice.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Renewed Motion to Stay Discovery. In the alternative, the Court should enter only the narrow relief described in Part IV.[5]

Dated: August 22, 2026

Respectfully submitted,

/s/ Ashwin J. Ram
Ashwin J. Ram (ARDC No. 6286478)
BUCHALTER LLP
180 North LaSalle Street, Suite 2300
Chicago, IL 60601-2808
Telephone: (312) 980-5760
aram@buchalter.com

Andrew C. Erskine (ARDC No. 6305806)
BUCHALTER LLP
180 North LaSalle Street, Suite 2300
Chicago, IL 60601-2808
Telephone: (312) 980-5773
aerskine@buchalter.com

*Counsel for Plaintiff J-M Manufacturing Company, Inc.*

[5] Defendants' footnote regarding J-M's separate action against a different firm in a different district (Mot. at 4 n.2) has no bearing on any stay factor and is addressed no further here.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Ashwin J. Ram